COSSACK & CO. v. W. H. S. BURGWYN.

*Partnership—Participation in Profits—Evidence.*

1. One who shares in the profits of a business otherwise than as the profits are looked to as a means of ascertaining the compensation which, under the contract, is to be paid to an employee for his services, incurs the liability of a partner therein.

2. Where B. indorsed a note of and made advances to a firm to enable it to perform a contract of which, as estimated, the profits would be thirty-nine thousand dollars, and took a bill of sale of the firm's property to secure such indorsement and advances, and the firm also executed to B. a note for $5,000, due one year from date, on which $500 was to be paid monthly "out of the estimated profits": *Held*, that the facts *prima facie* constituted B. a partner with the firm.

3. *Quære*, whether B. could be held as a partner if the note for $5,000 was given as a *bonus* for the indorsement and advances.

This was a CIVIL ACTION, tried before *Bryan, J.*, and a jury, at the February Term, 1892, of VANCE Superior Court.

The following issues were submitted to the jury:

1. Is the defendant company indebted to plaintiffs, and if so, in what sum?

2. Was W. H. S. Burgwyn a partner in the Henderson Tobacco Company when said debt was contracted?

Several contracts were introduced by the plaintiffs for the purpose of showing the relationship existing between the said Burgwyn and Daingerfield, Jenkins and others, trading under the name of the Henderson Tobacco Company. It appears that the said Burgwyn indorsed a note of five thousand dollars for the said firm, and also agreed to advance it as much as five thousand dollars during the twelve months succeeding the date of the contract of the 20th of December, 1889. On the same day, and in pursuance of said contract, the said firm executed to Burgwyn a bill of sale of its stock, machinery, etc., for the purpose of securing the said indorsement and advances. One of the objects, at least, of the indorsement and advances was to enable the said firm to perform a certain contract which it had entered into with one Thomas H. Blacknall, by which it was to manufacture a large amount of smoking tobacco of certain specified brands, and the said Blacknall was to sell it at a price which would net the company an estimated profit of thirty-nine thousand dollars. The contract with Burgwyn further provides that the said firm shall do all its "collecting of drafts for sales of tobacco and other banking business through the said Burgwyn's bank" at the usual bank charges; that it shall make a monthly exhibit to said Burgwyn by showing its books, etc., "of the condition and workings of its business," and the members of said firm further agreed not to enter "upon or engage in other business for the next year, other than the carrying out of the said contract with the said Thomas H. Blacknall." After stating that the indorsed note and advances

shall be paid, the contract further provides (paragraph 9) that the said parties shall give their note to said Burgwyn "for the sum of five thousand dollars, due one year from date, on which said monthly payments of five hundred dollars shall be indorsed as they are respectively paid." The other contracts relate to changes in the firm and other matters subsequently occurring, which are not material to the determination of the case. No testimony was introduced in behalf of the defendant Burgwyn, but it was in evidence that on an examination before the Clerk he was asked the following question: "Please state what was the consideration of the five thousand dollar note of December 20, 1889, due one year after date, of Daingerfield and Jenkins to you?" He answered "that the note of December 20, 1889, for five thousand dollars was executed in pursuance of section 9 of said contract, and said payment of five hundred dollars on the same was to come out of the estimated profits of thirty-nine thousand dollars which they were to make out of the contract with Blacknall, and was not in the nature of a *bonus;* not a dollar profit was made, so far as I know, and not a cent paid on this note; the whole contract with Blacknall went to pieces, and the whole thing is of no value, except as a lesson of experience." The defendant Jenkins stated that on said examination the defendant Burgwyn testified that "the note was not a *bonus,* but it was his part of the prospective profits to come out of the Blacknall contract."

The witness was asked to explain how they came to fix on six cents per pound on each pound of "Clear the Track" and two cents per pound on each pound of "Golden Hub" and three-quarters of a cent per pound on each pound of "All Round the World" sold the previous month, as the amount to be paid Burgwyn out of such sales as provided in Art. 3 of contract of October 8, 1890.

Objection by defendant. Objection sustained, and plaintiffs excepted.

*Cross-examination.*—My feelings towards Burgwyn are pretty tough; I would make him pay all I could.

H. T. Jenkins, recalled, testified that the bill of sale of December 20, 1889, was to operate as a mortgage; the property was to be returned to us.

Plaintiffs here closed, and defendant introduced no testimony.

Plaintiffs requested the following charges in writing, and before the opening of the argument:

1. If the jury shall be satisfied from the evidence that Burgwyn was to be paid $5,000 out of the net profits of The Henderson Tobacco Company, in addition to eight per cent. interest on the money loaned or advanced by him to said company, such agreement is to be construed as evidence tending to establish the partnership relation, and, in the absence of any other proof, is to be regarded as sufficient to establish the partnership.

2. If you shall find from the evidence that Burgwyn has so contracted with The Henderson Tobacco Company that he has a right to examine the books of the company, and was entitled to receive regular statements showing the condition of its firm business, such rights and privileges are badges of partnership.

3. If you shall find that before R. L. Daingerfield could dispose of his interest in The Henderson Tobacco Company it was necessary for him to have the consent of Jenkins, Shelby and Burgwyn, such an agreement was a badge of partnership.

4. If you shall find that Burgwyn drew checks in the name of The Henderson Tobacco Company, and the same were honored and paid at his bank, that this is a very strong badge of partnership.

5. If you shall find that under the contract of Dainger-field and Jenkins with Burgwyn, and also the contract of Daingerfield, Jenkins & Shelby, trading as The Henderson Tobacco Company, neither of them, the said Dainger-field, Jenkins or Shelby, was to engage in any other business during the continuance of the contract, and was to give his undivided attention to said business, that such an agreement is a badge of partnership.

6. If you shall find that the payment of the $5,000 note of December 20, 1889, was contingent upon the success of the business and not upon the personal security of the borrowers, then it is *prima facie* evidence of a partnership.

7. That there is no evidence that the $5,000 note on which monthly payments were to be made was secured in the bill of sale for $10,000, dated 20th December, 1889.

His Honor charged the jury to find the first issue in favor of the plaintiffs, and on the second issue for the defendant Burgwyn, whereupon plaintiffs submitted to a nonsuit as to the defendant Burgwyn and appealed, and assigned for error as follows :

"A." That his Honor erred in refusing plaintiffs' request for instructions to the jury from 1 to 7, inclusive.

" B." That his Honor erred in excluding evidence offered by the plaintiffs and objected to by defendant.

"C." That his Honor erred in his charge as given, that there is no sufficient evidence from which the jury might reasonably conclude that W. H. S. Burgwyn was a partner with other defendants in said firm.

*Messrs. H. T. Watkins* and *W. H. Cheek*, for plaintiffs (appellants).

*Mr. J. H. Bridgers*, for defendant.

SHEPHERD, C. J.: Ever since the decision of DE GRAY, C. J., in 1775, in *Grace* v. *Smith*, 2 William Blackstone, 998, it has been generally held that all persons who shared in the profits of a business incurred the liabilities of partners therein, although no partnership between themselves might have been contemplated. The decision was subsequently approved in the leading case of *Waugh* v. *Carver*, 2 H. Black, 235. This seems to have been the rule, without any qualification, until an exception was made in cases where the profits were looked to as a means only of ascertaining the compensation which, under the contract, was to be paid for the services of an employee. Thus the law of England stood for nearly a century, and these general principles are still regarded in North Carolina and most of the States as the "ordinary tests" of copartnership. *Fertilizer Co.* v. *Reams*, 105 N. C., 283. Applying these principles to the case before us, it seems clear that the plaintiffs have made out at least a *prima facie* case of copartnership against the defendant Burgwyn. The fact that the said defendant indorsed the note and made advances to the firm, taking the bill of sale as security therefor, does not prevent his being liable as a copartner if the other elements of a copartnership exist. The note executed pursuant to the contract for $5,000 payable in monthly installments of $500, was not given for advances made or to be made, and could not have been enforced, as between the parties, except as against the profits of the business. Its payment, it seems, was contingent upon the estimated profits of $39,000 which the parties expected to make out of the Blacknall contract. It is argued that this $5,000, although usurious, was simply in lieu of interest, and that under the modification of the law as laid down by the House of Lords in *Cox* v. *Hickman* and some of the modern American decisions, this would not constitute a copartnership.

In the case of *Fertilizer Co.* v. *Reams, supra,* we referred to this departure from the ancient doctrine, but stated that it was unnecessary to decide whether it would be recognized in this State.    Neither is it necessary to pass upon the question at this time, as the evidence does not disclose the existence of such an agreement as that assumed by counsel. On the contrary, it appears that the $5,000 was not a "*bonus,*" and if not a *bonus* we cannot see how it can be regarded as a mere compensation in lieu of interest, etc.    If, upon another trial, this testimony is explained and the agreement be such as claimed by counsel, a new and interesting question will be presented to the Court; but in the absence of testimony to this effect we cannot but infer that it was the understanding that the defendant Burgwyn was to participate in the profits as such.

Neither is it shown, as contended, that the agreement was merely executory.    It appears that money was advanced under the agreement, and the said defendant does not deny that the contract ever went into effect.    He says the contract with Blacknall "went to pieces," but he does not state at what time.    He simply says that not a dollar of profit was made out of it, *as far as he knew.*    Under the evidence adduced by the plaintiffs it is incumbent on the defendant to establish such a defence, and this he has not attempted to do.    We are, therefore, of the opinion that there was error in holding that there was no evidence tending to fix upon the said defendant the liability of a partner.    We are also of the opinion that the testimony offered by the plaintiffs should have been admitted.            New Trial.