W. L. JETER v. W. H. S. BURGWYN et al.

*Partnership—Participation in Profits.*

1. If persons who are not partners agree to share the profits and loss, or the profits, of one particular transaction or adventure, they become partners as to that particular transaction or adventure, but not as to anything else. Therefore,

2. Where, in an action against defendant, plaintiff sought to hold him responsible for a debt contracted by a partnership of which defendant was not a member and had not so held himself out to be, but plaintiff contended that, by reason of an alleged agreement between defendant and the firm that defendant should share in the profits of a particular adventure, defendant had become a *quasi* partner and liable for all the debts of the firm: *Held*, that it was not error to charge the jury that plaintiff could not recover if they should find that the adventure in which defendant was alleged to be interested had terminated before plaintiff's debt was contracted.

CIVIL ACTION, tried before *Shuford, J*, and a jury, at May Term, 1893, of VANCE Superior Court.

The plaintiff sought to charge the defendant Burgwyn, as a partner of the Henderson Tobacco Company, for a debt due by the company to plaintiff. The issue submitted was as follows:

"Was the defendant W. H. S. Burgwyn a partner in the Henderson Tobacco Company at the time the plaintiff's debt is alleged to have been contracted?"

After the evidence was in, his Honor intimated that he would charge the jury in defendants' favor, and the plaintiff submitted to a nonsuit, and appealed.

The facts are sufficiently stated in the opinion of Chief Justice SHEPHERD.

*Messrs. W. H. Cheek* and *H. T. Watkins*, for plaintiff (appellant).

*Mr. J. H. Bridgers*, for defendants.

SHEPHERD, C. J.: The ruling of his Honor which is presented for review does not involve a consideration of the question suggested in *Fertilizer Co.* v. *Reams*, 105 N. C., 283, and *Cossack* v. *Burgwyn*, 112 N. C., 304, whether a loan to a partnership, to be paid out of the profits, does, in itself, without any holding out, impose upon the lender a partnership liability to third persons. In Cossack's case, after referring to the principle of the ancient English cases, that sharing in the profits was, with one or two exceptions, an absolute test of partnership, we stated that, even under the modern doctrine as declared by the House of Lords in 1860, in *Cox* v. *Hickman* (see Reams' case, *supra*), such sharing would, at least, make out a *prima facie* case as to the existence of that relationship. If, however, we should go further and concede that any participation whatever in the profits would be conclusive evidence of partnership as to third persons, we would still be unable to perceive any force in the exception to the charge of the Court.

What constitutes a partnership is a question of law (*Jones v. Call*, 93 N. C., 170), and there is nothing in the various contracts between the Henderson Tobacco Company and the defendant Burgwyn, nor in their dealings with each other, that indicates an intention that Burgwyn was to become an actual partner in the said company. The plaintiff, therefore, in order to recover of Burgwyn, must show such circumstances as would constitute a partnership as to third persons, or as it is sometimes termed in the text-books, a *quasi* partnership.

The Henderson Tobacco Company was, it seems, engaged in the manufacture and sale of tobacco, and had on the 20th of December, 1889, entered into a contract with one Blacknall to manufacture three hundred thousand pounds of certain brands of smoking tobacco during the next year, which the said Blacknall was to sell at a price which would net the company an estimated profit of thirty-nine thousand dollars. On the day above mentioned Burgwyn and the company entered into an agreement, reciting that the former had endorsed a note for the latter of five thousand dollars, and that Burgwyn was to advance to the company during the succeeding twelve months an additional five thousand dollars to enable the company to carry out the Blacknall contract. It was agreed that the company was to secure Burgwyn to the amount of ten thousand dollars, by conveying to him all of their stock of leaf and manufactured tobacco and their machinery, fixtures, etc., which conveyance was executed on the same day. In the aforesaid agreement it was further stipulated that the company should execute to Burgwyn a note for five thousand dollars, which note was also executed on the same date. This note, it is conceded, was independent of the endorsement and advances just referred to, and was not secured by the conveyance of the property above mentioned. It was given in consideration of the endorsement and advances, and there was an apparent

conflict in the testimony of Burgwyn and his statement on a previous trial in respect to the manner in which it was to be paid. The plaintiff contended that it was to be paid out of the profits of the Blacknall contract, and that its payment was entirely contingent upon such profits. The defendant Burgwyn insisted that the payment was not so contingent, but was an absolute engagement on the part of the company to pay at all events and without reference to profits.

Assuming the correctness of the plaintiff's view of the facts, and also his contention that such a view would constitute a *quasi* copartnership, yet it appears from the authorities that such a copartnership would relate only to the Blacknall contract. Lindley in his work on Partnership says: "If persons who are not partners agree to share the profits and loss, or the profits of one particular transaction or adventure; they become partners as to that transaction or adventure, but not as to anything else." 1 Vol., 49. According to the contention of the plaintiff, the note was to be paid out of the profits arising from the Blacknall contract, and it is clear that if the said contract had terminated before the plaintiff's debt was contracted, the defendant Burgwyn, not having held himself out as a partner, would not be liable as such. This would be true, although no notice of a dissolution of the particular *quasi* copartnership was given. Lindley, *supra*, 213. There is no evidence that the said defendant ever so held himself out, or that plaintiff knew anything of the transaction in question. It must follow, therefore, that if the Blacknall contract terminated before the 7th of February, 1891, the date of the contract sued upon, the plaintiff cannot recover.

His Honor charged the jury that they must so find if they believed the testimony of Burgwyn and Daingerfield, which was explicit and uncontradicted on this point. In this there was no error, nor was there error in his instruction that clauses numbers 9 and 10 in the contract of April 29, 1890, and the contract of October 8, 1890, stating that Burgwyn's

rights under former contracts should be continued, were no evidence that the contract with Blacknall had not terminated. The plaintiff upon this charge suffered a nonsuit and appealed. For the reasons given we think the nonsuit must stand.

Affirmed.