BURROUGHS ADDING MACHINE COMPANY v. L. G. MORROW & CO.

(Filed 3 October, 1917.)

**Partnership—Dissolution—New Agreement—Profits—Individual Liability.**

Where a partnership, A. & B., has been dissolved by the mutual consent of the parties, who thereupon enter into another written agreement, assuming some of the contracts of the former partnership, and changing its name to A. & Co., giving the management to A. and providing specifically that B. shall receive "his *pro rata* share of the net profits" of the business, the new arrangement having been signed by both of them, but is in many respects ambiguous or unintelligible: *Held,* by the clear provision of the contract, a partnership has been created, making B. liable for the debts incurred in the business, there being nothing to show the profits were looked to only as a method of compensating B. for services rendered.

BROWN, J., dissenting.

APPEAL by George E. Moore from *Stacy, J.,* at March Term, 1917, of PITT.

*Outlaw & Darden for Plaintiff.*
*Albion Dunn and Skinner & Cooper for appellant.*

CLARK, J.  This action is to recover $175, purchase price of an adding machine, the contract to purchase being signed by "L. G. Morrow & Co., by L. G. Morrow, Manager."  L. G. Morrow and G. E. Moore were partners in the firm of Morrow & Moore, which was dissolved 12 June, 1914. Thereafter, on 20 June, 1914, L. G. Morrow and G. E. Moore entered into articles of agreement, reciting that L. G. Morow and G. E. Moore had dissolved their partnership, and without repudiating that dissolution in any way, and agreeing that the firm of L. G. Morrow & Co. should be liable for certain contracts therein specified, which had been made between the firm of Morrow & Moore and certain parties named, and annulling a former contract by which L. G. Morrow was to deliver a deed for certain property to G. E. Moore upon a consideration of $1,500, and leaving that matter optional with said Morrow and certain other agreements in regard to the business of the former firm of Morrow & Moore, the following provision is added: "It is hereby agreed by the said G. E. Moore that he shall continue in said business during the year 1914, and that he will be and remain vigilant and active in securing in good faith all business possible for the L. G. Morrow Co."  There is a further provision that "The firm business of L. G. Morrow & Co." shall be managed by L. G. Morrow, and that no one connected with or interested in said firm and business shall have authority to make any contract without  the permission of L. G. Morrow, manager."  There is also a further provision that "no one interested in the firm of L. G. Morrow & Co. shall have authority to purchase tobacco without the permission of L. G. Morrow, manager; that the sales shall be managed by L. G. Morrow, and that no one connected with the firm of L. G. Morrow & Co. shall in any way interfere with sales of tobacco," and that "All parties interested in or connected with the firm of L. G. Morrow & Co. agree that all checks drawn by L. G. Morrow & Co. shall be countersigned by L. G. Morrow & Co."  There is also this provision: "The said G. E. Moore shall be entitled to his *pro rata* share of the net proceeds of said tobacco business during the year 1914."

On 3 August, 1914, L. G. Morrow & Co. bought of plaintiff an adding machine at the price of $175.  This proceeding was begun before a magistrate to recover the above sum, against L. G. Morrow and George E. Moore, alleging partnership.  George E. Moore defended upon the ground that he was not a partner.

The judge, on the trial in the Superior Court, recited the terms of the contract, and charged that the instrument referred to "made Moore a partner in the tobacco business for the year 1914, because, under the agreement, he was to take a part of the profits, and that would render him liable for the debt." Moore excepted to this instruction and, the jury having found against him, appealed.

The contract is a very confused and complicated instrument. Moore's counsel very frankly says in his brief: "We must confess that the contract is clouded in doubt, and it is indeed hard to say exactly what it does mean, or what function it was intended that it should perform. It is flooded with inconsistencies, and ambiguities are abundant. In fact, after reading the contract, we know of no language that will so well describe it as the language of Mr. Greenleaf, as follows: 'The instrument is valuable, not only for its intrinsic complication, which is insuperable, but also for its lamentable ambiguity of phrase and confusion of terminology' "; but there is no ambiguity in the agreement that Moore "is to remain in the business during 1914, and shall receive his share of net proceeds."

The firm of Morrow & Moore was dissolved, and subsequently on 20 June, 1914, the agreement between Morrow & Moore was executed. This contract specifies that Moore was to share in the profits for the year 1914. There are several references in this contract that Morrow alone of those interested in the business was to sign checks and have control over the business as manager. And there is no evidence tending to show that any one had any interest in the business besides L. G. Morrow, except G. E. Moore, and as to him there is this agreement: "In case and provided the said repayment is made, as provided in this the fifth article of these agreements, then the said G. E. Moore shall be entitled to his *pro rata* share of the net proceeds of said tobacco business during the year 1914." Why was Moore a party to the above agreement unless he was a partner in the new firm. In *Cossack v. Burgwyn,* 112 N. C., 305, the Court held that one who shares in the profits of a business, either from capital invested or for services rendered, becomes a partner and liable as such. The Court held that one who loans money to an individual or firm and takes security for the same, and besides the security, a profit from the business is received by him, becomes a partner in the business and liable for its debts.

In *Webb v. Hicks,* 123 N. C., 244, the Court held, citing *Jones v. Call,* 93 N. C., 170; *Kootz v. Tuvian,* 118 N. C., 393: "When the facts are undisputed, what constitutes a partnership is a question of law, and the usual, not the universal, test is participation in the profits and losses of the business. In *Norfleet v. Ins. Co.,* 160 N. C., 327, it is held that the obligation of the partner is joint and several."

The agreement here is in writing, and the facts are not disputed, and the judge did not err in telling the jury that as the defendant Moore was to share in the profits, he was liable for the debt which was incurred in carrying on the business. It would be otherwise if it were shown that the share in the profits was merely a method of fixing the amount of the salary.

Exception was taken to the verification of the account, but it was verified and proven in the manner required by Revisal, 1625. *Nall v. Kelly,* 169 N. C., 718. This made out a *prima facie* case for the goods sold. *Lipensky v. Revell,* 167 N. C., 508. The issue was in proper form.

We find

No error.

BROWN, J., dissents.