MATTIE PARKER EGGLESTON v. FRANK EGGLESTON.

(Filed 7 April, 1948.)

**1. Pleadings § 24c: Partnership § 1a—**

The complaint alleged the existence of a partnership between the parties. By amendment it was alleged that defendant filed partnership tax returns for a specified year and that plaintiff believed defendant, in filing the returns, intended to create a partnership. *Held:* Construing the allegations of the pleading liberally, plaintiff was not limited to evidence of transactions relating to the filing of the income tax returns, but evidence of prior transactions between the parties in regard to the business is competent not only as supporting the contention of the creation of a partnership at the time the returns were filed, but also under the allegations of the original complaint as tending to show there was an implied partnership agreement between the parties whenever or wherever created.

**2. Husband and Wife § 12b: Partnership § 1a—**

Husband and wife may enter into a contract creating a business partnership between them, G. S., 52-2, but where the wife's separate estate is

involved as a part of the partnership property, the provision of G. S., 52-12, must be observed.

3. **Partnership § 1a—**

While a partnership rests on contract, the agreement may be written or verbal, express or implied.

4. **Same—**

Evidence of a course of dealing between the parties is sufficient to establish a partnership between them if it evinces the essential elements of a partnership agreement, including the necessary intent.

5. **Same—**

Partnership tax returns prepared by defendant are competent as an admission against interest in an action to establish the existence of a partnership between the parties, not as creating a partnership, *per se*, but as evidence to be considered with the other evidence of an implied agreement. The fact that immediately after dispute defendant filed an individual return by way of amendment does not render the original returns incompetent.

6. **Husband and Wife § 4—**

The presumption that services rendered by the wife to her husband are gratuitous is not conclusive and may be overcome by evidence tending to show that the services were not gratuitous.

7. **Husband and Wife § 12b: Partnership § 1a—**

Plaintiff relied upon a partnership tax return as evidence in support of her contention of an implied business partnership agreement between herself and husband. *Held:* Testimony of plaintiff that she acted in good faith and not as a participant in a fraudulent attempt to evade payment of income taxes in signing the returns, is competent.

8. **Partnership § 1a—**

It is not necessary that each partner furnish a part of the partnership capital, but the services of one party may be balanced against the capital furnished by the other, and therefore an instruction to the effect that the partnership capital must belong in common to the parties in order to establish a partnership, is error.

9. **Same: Husband and Wife § 12b—**

Plaintiff wife sought to establish an implied partnership agreement based upon her personal services to the business. *Held:* An instruction predicating plaintiff's right to a share in the partnership assets solely upon a gift *inter vivos* to her by her husband, is error.

10. **Same—**

Plaintiff wife contended that over a period of years she performed personal services to the business carried on in the husband's name under an implied partnership agreement. Plaintiff introduced as supporting evidence, partnership tax returns for a specified year prepared by defendant. *Held:* An instruction that in making and filing the returns defendant must have intended to make his wife a partner is error, not only as limiting the question of intent to that one instance, but also as treating the returns as creating the partnership rather than only evidence of its existence.

**11. Partnership § 1a—**

Plaintiff wife introduced in evidence partnership income tax returns prepared by defendant husband as supporting evidence of an implied partnership agreement. *Held:* An instruction that the jury was not concerned with whether the returns were filed for the purpose of defrauding the government is error as calculated to impress the jury that such a thing, if true, need not reflect upon defendant's credibility as a witness.

**12. Divorce §§ 1b, 14—**

When the husband by cruel treatment renders the life of the wife intolerable or puts her in such fear for her safety that she is compelled to leave the home, the abandonment is his, and is sufficient ground for alimony without divorce. G. S., 50-16.

**13. Divorce § 2½ b—**

While condonation obliterates the conduct condoned as a cause for divorce, a subsequent renewal of the misconduct may be such as to revive the former offense and render it competent for the consideration of the jury upon the issue.

**14. Same: Divorce § 14—**

Where plaintiff's evidence discloses assaults and threats over a period of years, an instruction which limits the jury, in determining the issue of abandonment, to the last incident culminating in the wife's leaving the domicile of the husband, must be held for error, since the plaintiff has the right to rely upon the cumulative effect of the years of mistreatment upon this issue.

**15. Divorce § 9d—**

In an action for alimony without divorce, an instruction which fails to enlighten the jury as to the character of the provocative words or acts on the part of plaintiff which would excuse the conduct of defendant is prejudicial to plaintiff on the question of abandonment and the question of his cruel and inhuman treatment.

PLAINTIFF's appeal from *Olive, J.,* July Special Term, 1947, ROCK-INGHAM Superior Court.

*Harry L. Fagge, James Fagge, and Smith, Wharton & Jordan for plaintiff, appellant.*

*Brooks, McLendon, Brim & Holderness, Price & Osborne, and P. W. Glidewell for defendant, appellee.*

SEAWELL, J. The plaintiff brought this suit against her husband for alimony without divorce under G. S., 50-16, joining with this cause of action (b) a cause of action to have herself declared a business partner with her husband and to have her rights under the partnership adjudicated and an account taken and (c) an equitable cause of action respecting the disposition of the body of a deceased child, in which she sued out an injunction against her husband to prevent its disposition as intended

by him. Upon an order to show cause this injunction was continued to the hearing.

When the case was called to trial at the special term of court presided over by Judge Hubert E. Olive, upon the reading of the pleadings, the defendant demurred *ore tenus* to the cause of action with respect to the disposition of the body of the deceased child and the motion was over-ruled. The defendant then moved for severance of the three causes of action; and thereupon the court granted the motion to sever the action in equity as to the disposition of the deceased child from the other two causes of action and the plaintiff excepted. The case then proceeded to trial, the issues being answered as to both causes of action unfavorably to the plaintiff, who, having taken exceptions hereinafter noted, along with numerous others, preserved them for review by moving to set aside the verdict of the jury for errors committed during the trial, and this motion having been declined, objected and excepted to the judgment, and appealed.

There were 192 exceptions taken by the losing party during the trial and the record with which we have to deal contains 622 typewritten pages.

It is possible to reproduce, in summary, only those portions of the record which are directly pertinent to the decision and necessary to its understanding, giving the general purport of the pleadings and the evidence except where particularity is required.

### THE QUESTION OF BUSINESS PARTNERSHIP:

The plaintiff sought to show the existence and nature of the alleged partnership between herself and her husband by evidence of dealings *inter partes* for a long period of years and her contributions to the joint undertaking; and by introducing the joint partnership income tax returns for the year 1945 made by herself and husband to the Federal and State taxing authorities, respectively, with other evidence pertinent to this transaction.

More particular reference to these returns will be made further on. For clarity we may say here that in both of the returns it is declared that a partnership existed between the plaintiff and the defendant for the calendar year 1945, manifesting partnership on equal shares as to the net income. After this suit was brought the defendant filed "amended" or "corrected" returns, in point of fact *individual* returns, eliminating the partnership feature.

The evidence by which plaintiff sought to show the alleged partnership may be summarized as tending to show the following facts and conditions:

When they first moved into the filling station on the Draper road and started business she helped display the stock; while defendant went out

into the "territory" plaintiff was in charge of the filling station, worked there with no assistance except casual help from little boys to whom plaintiff paid small sums; plaintiff had access to the funds, taking in the money and keeping it in the cash drawer; she put her "inheritance money," about $125.00, in the business at this early stage; she sometimes bought, but buying was mostly done by defendant. As more filling stations were added plaintiff went and put up signs in the windows, displayed stock and helped them get set up in the business. She worked regularly during this period, living in the service station for 15 years, and except for a short period of time and vacations in the summer, was there continually, often being compelled to let her housework go. She had often gone without food all day except what she could pick up at the filling station. She sold things out of stock, serviced cars, putting in gas and oil; carried water from the pump in tubs, as there was, for a long time, no running water; washed cars, often making $5.00 a day in this way. Plaintiff handled the paid and unpaid bills, made out statements and sent them out. Later plaintiff took a bookkeeping course and learned to type, and thereafter kept books for the business. After plaintiff and defendant moved into the new home in 1940 until 1946, while plaintiff did not go to the filling station every day because of her illness, the help came to her to inquire about the business and for direction in matters with which she was familiar, and she continued in charge during Mr. Eggleston's absence. Between 1940 and 1946, when they separated, she went down and did book work. During 1945 plaintiff and her brother, Pickett Parker, did the book work together. Plaintiff took part in the conduct of the tire business, sold tires, entertained presidents of tire companies in her home; sold and delivered tires in the service station and in the territory, took orders and saw that they were delivered; delivered tires in the territory; met people on the highways with tires, delivering and taking orders.

All this proffered evidence was rejected upon objection made *seriatim* by defendant, and in the same manner plaintiff excepted.

The plaintiff then testified that during the year 1945, she was not certain of the date, defendant came into the kitchen where she was cooking supper, put his arm around her, started kissing her and told her she was his business partner. "I asked him what he meant and I said I had been his business partner for twenty years. He said I had always been worried about losing a great deal of the business at his death, and he had fixed it so I would not even have to pay inheritance tax on my part of the partnership. He talked to me about it and ten days or two weeks later he signed—he said of course I would have to pay income since I was a partner in the business and he brought some papers in for me to sign. I signed three different sheets, I think, income papers and different papers, and a blank check."

After identification, plaintiff then introduced in evidence copies of the joint partnership income tax returns made by herself and husband for the calendar year 1945 to the Federal and State taxing authorities, respectively. These returns manifest a taxable net income for that year of $20,801.29 and indicate that Mattie P. Eggleston, the plaintiff, and Frank Eggleston, the defendant, were partners upon equal shares in the business, entitling each to one-half of said net income. The partnership appears as "Eggleston Brothers Filling Station." Accompanying these returns there was a partnership return of estimated tax for the year 1946.

Thereupon plaintiff sought to testify that she signed the documents above mentioned in good faith and upon objection by the defendant the evidence was excluded.

At the same time she offered to testify that she believed the defendant when he told her she was his partner and this also was excluded.

On review the rights of the plaintiff and the validity of the trial which purports to deal with them, must be made to depend on the whole evidence, both competent evidence excluded and the evidence which ran the gamut. So, before examining the instructions given the jury on the 4th issue relating to the partnership, it is necessary to turn to the evidence of the plaintiff as above noted—principally her own testimony—of the dealings between herself and husband with relation to the business in which she claims partnership.

This evidence was excluded apparently upon the theory that her complaint setting up the creation of the partnership restricts her to the transactions involved in the filing of the income tax returns, and especially to its organization on January 1, 1945. We are of the opinion that such a restriction does not necessarily follow from the allegations in her complaint, as a whole, liberally construed. However this may be, the evidence as to her contributions to the business and the circumstances under which the services were rendered are of such a nature as to support her further contentions as to the creation of the partnership, strengthening the plausibility and credibility of that claim both as a moral and legal consideration for the formation of the partnership, however and whenever it occurred. Its exclusion was error. But we do not mean by this to limit its effect to the function of supporting evidence for a partnership subsequently created. In our view of the case the whole evidence directed to the existence of the partnership must be taken together, and so taken was competent to be submitted to the jury for their consideration and evaluation.

Under the common law as a consequence of the fictional merger of husband and wife into one person, and other disabilities of the wife incident to coverture, there could be no contract and, therefore, no busi-

22—228

ness partnership between husband and wife. 26 Am. Jur., pp. 853, 854; 41 C. J. S., Husband and Wife, p. 594, sec. 121; id., sec. 129 (b), p. 602; id., sec. 178, pp. 656, 657. That incapacity has been removed in many states by the enactment of "Married Women's Acts,"—statutes directly or impliedly giving them the power or the right to contract. The broad general powers of contract given under most of these statutes has in many instances been extended by judicial interpretation to authorize the formation of partnerships with the husband. In this State the "Martin Act," Chapter 109, Laws 1911, G. S., 52-2, has been held to vest the wife with the power to contract with the husband so as to create a business partnership. Bristol Groc. Co. v. Bails, 177 N. C., 298, 98 S. E., 768; Dorsett v. Dorsett, 183 N. C., 354, 358, 111 S. E., 541, 543; Carlisle v. Carlisle, 225 N. C., 462, 35 S. E. (2d), 418. The making of such a partnership is subject to the provisions of G. S., 52-12, applying generally to contracts between husband and wife; but as the separate estate of the wife is not involved here so as to defeat recovery, its discussion is not necessary to the decision.

"A contract, express or implied, is essential to the formation of a partnership." 40 Am. Jur., Partnership, p. 135, sec. 20, see notes 14, 15. But we see no reason why a course of dealing between the parties of sufficient significance and duration may not, along with other proof of the fact, be admitted as evidence tending to establish the fact of partnership provided it has sufficient substance and definiteness to evince the essentials of the legal concept, including, of course, the necessary intent. Waring v. Grady, 20 Ala., 465; "Partnership is a legal concept but the determination of the existence or not of a partnership, as in the case of a trust, involves inferences drawn from an analysis of 'all the circumstances attendant on its creation and operation,' Helvering v. Clifford, 309 U. S., 331, 335, 60 S. Ct., 554, 556, 84 L. Ed., 788; Doll v. Commissioner of Internal Revenue, 8th Cir., 149 F. (2d), 239."

Not only may a partnership be formed orally, but "it may be created by the agreement or conduct of the parties, either express or implied," Sterman v. Ziem, 17 Cal. App. (2d), 414, 62 P. (2d), 160, 162. As stated in Niroad v. Farnell, 11 Cal. App., 767, 106 P., 252, "A voluntary association of partners may be shown without proving an express agreement to form a partnership; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such." Of significance on this issue is the statement of the plaintiff, "We divided the profits," and that when they came to a temporary separation the defendant agreed to keep her interest intact. Cossack v. Burgwyn, 112 N. C., 304, 16 S. E., 900; Machine Co. v. Morrow, 174 N. C., 198, 93 S. E., 722; Uniform Partnership Act, G. S., 59-37, subsection 4.

Where the fact at issue is the existence of partnership the admissions against interest of the person denying the partnership are significant in establishing it. The use and the function of the partnership tax returns as evidence was not *per se* to create the partnership but, together with other evidence directed to the fact, to establish its existence. They must be considered within the light of the circumstances, their purpose and the deliberation required in their composition. While a mere casual remark made on the streets might not be sufficient as evidence of the existence of a partnership, the tax returns in evidence are of greater significance on account of the solemnity of the oath under which they are made and the deliberate and comprehensive statement of the relation of the parties they contain. While we doubt the propriety of admitting the evidence of the amended or corrected returns, because of their self-serving nature, the hasty effort of the defendant to regain his lost status did not cancel out the evidence afforded by the original returns or such legitimate inferences as the jury under proper instructions might have drawn from them as evidence of the existence of the contract or such inferences as they might legitimately draw from the entire transaction as to the credibility of the defendant. The facts presented in the evidence of the plaintiff make out a case sufficient to "hold water taxwise" as creating a partnership. See "Husband and Wife, or 'Family' Partnerships," Indiana Law Journal, Vol. 20, p. 65, containing copious citations of authority applicable to the case at bar.

It is proper to say here that the services rendered by the wife to her husband are presumed to be gratuitous. *Winkler v. Killian,* 141 N. C., 576, 578, 54 S. E., 540; *Dorsett v. Dorsett, supra.* The presumption is not conclusive; *Dorsett v. Dorsett, supra;* and may be overcome by evidence tending to show that the services were not gratuitous. *Stewart v. Wyrick, ante,* 429. That was a matter for the jury.

The court excluded evidence of the plaintiff that she had acted in good faith in signing the papers, including the partnership returns of income tax, and believed what the defendant had stated to her concerning the partnership to be true. This was error. It had a substantive bearing on the existence of the partnership; and the plaintiff had the right to say that she acted in good faith and not as a participant in a fraudulent attempt to deprive the Government or the State of its taxes.

In undertaking to apply the law to the evidence relating to the partnership the court, amongst many other exceptive instructions to which we cannot afford space, gave the following:

> "The Court charges you as a matter of law on this fourth issue that if you are satisfied from the evidence and by the greater weight that the defendant told his wife that he was making a full partner of her; (that he intended by that to give her one-half interest in

the business) and that he made out income tax returns; that is gave her one-half interest; intended to give her and did give her one-half interest in the business and in the share of the profits and in losses, if any, that she had to share and that he filed income tax returns; that he intended by filing those income tax returns that she should have the amount of money on that that was placed after her name; that she was to receive and that he filed an estimated tax return for the year 1946 and he set out there that she was a full partner and that he intended by that that she should own half of the business and be entitled to half the profits and share in half the losses; and you are further satisfied by the greater weight of the evidence that by saying and doing those things he gave her the right to dominion; that is the right to say what should be done with her half interest in that property even though she didn't actually do that; didn't actually say what should be done about her half of the property; but you are satisfied by the greater weight of the evidence on account of these things that she had the right to do it and that she owned one-half interest in the business and was entitled to share in the profits and the losses; entitled to one-half of each and you are satisfied of each and every one of these facts by the greater weight of the evidence, and you are so satisfied by those facts and circumstances by the greater weight of the evidence that she had the right there in this property and profits and losses; and you are satisfied by the greater weight of the evidence that she accepted this gift, this one-half interest in the business and in the profits and losses and you are so satisfied by the greater weight of the evidence, it would be your duty to answer this fourth issue 'Yes.' If you are not so satisfied, you would answer this fourth issue 'No.' "

"Gentlemen of the Jury, if you find from the evidence that the defendant filed income tax returns simply to keep from paying as much taxes as he would have paid if he had filed it in his name, but not with the intent or purpose of making his wife a full partner in the business with him; that he did not ever intend to make her a partner in the business, whether he told her so or not, and if you find that he did not but it was only done for that purpose, and that he had no intention of making her any gift of it, and you so find from the evidence, it would be your duty to answer this issue 'No.' "

"On the fourth issue, the Court charges you that the burden is upon the plaintiff to satisfy you by the greater weight of the evidence that she and the defendant entered into a contract or agreement, providing by its terms that they were to be partners in the ownership and operation of the property, both real estate and personal property, owned by the defendant on and prior to January 1, 1945."

EGGLESTON *v.* EGGLESTON.

"In order to constitute a partnership between two persons, the Court charges you that it would be necessary for such persons to combine their property, labor and skill under an agreement to share the profits and losses in equal or some specified proportion. The Court charges you that a mere statement made by one person to another that the speaker is making the other person a partner in an existing business owned by the speaker is not sufficient in law to constitute the formation of a partnership."

"The Court charges you that in order to constitute a valid gift under the laws of North Carolina, it is necessary that the person making the gift shall have the intention to give certain property identified and such intention must be accompanied by a delivery of the property, if it is personal property and capable of delivery, or a conveyance by deed or other instrument if the property is real estate."

Without further detail it is sufficient to say that they exhibit amongst other errors, the following: First, it is not necessary to a partnership that property or capital involved in it should belong in common to the parties to the contract. On the contrary, a familiar type of partnership, as indicated by the evidence in this case, occurs where the services of the one party is balanced against the capital furnished by the other; and the statement that the property must be held in common before plaintiff can recover is error; second, the partnership sought to be established did not necessarily involve a gift of property by the husband, and it was error to make her rights depend upon the laws respecting gifts *inter vivos;* third, while in partnership, as in any other kind of contract, there must be an intent, it was error to instruct the jury that before they could find for the plaintiff they must be satisfied by the greater weight of the evidence that the defendant, by the making and filing of the partnership income tax returns in evidence, intended to make his wife a partner. The instruction to that effect has a further infirmity that the plaintiff has not contended and could not contend that the partnership was created by these documents, but only introduced them as evidence of its existence.

A further instruction to the jury to the effect that they were not concerned with the question whether the defendant made and filed the partnership income tax returns for the purpose of defrauding the Government, as that was a matter between defendant and the Government, was calculated to impress the jury that such a thing, if true, need not reflect upon his credibility, and to relieve him from the most damaging situation he had to confront on this issue.

### THE CASE FOR ALIMONY:

The trial of the cause of action for enforcing partnership rights with that for alimony led to considerable embarrassment in the admission and rejection of evidence, and placing the admitted evidence in the proper cubicle for consideration. Thus, it is apparent that much of the evidence rejected by the court as not competent on the partnership issue was competent in the proceeding for alimony, and, therefore, was erroneously excluded in its relation to that subject. However, we need only refer briefly to certain salient features of the evidence and pertinent instructions to the jury to make our conclusion understood.

The evidence of the plaintiff tends to show that within a year after the marriage her husband beat her violently with his fists, leaving her bruised and bleeding about the face and mouth, and that he was convicted of the assault; that he was of a violent disposition, quick tempered, addicted to drink, and insanely jealous. She testified that on numerous occasions during the subsequent years she was the victim of brutal and unprovoked assaults, specifying that on one occasion he beat her severely with a shoe, until her body was covered with bruises; again that he threatened her life, locked her in the bathroom and kept her there for hours; that on another occasion, when she questioned the size of the dose of medicine he had been requested to give her, he grew furious and took her by the hair, choked her, and forced her to take it, and another dose of like size that had not been prescribed; that he questioned her fidelity because he saw a sailor going to the house in his absence—the sailor proved to be her brother, just returning from the service,—and furiously upbraided her. She further testified that she had frequently been compelled to leave home because of his cruel treatment, and in many instances he persuaded her to return, promising to reform. That he threatened her life, and because of this mistreatment, and others she detailed, and because of fear for her life she was compelled to seek final refuge in the home of her parents. The incidents, she testified, ran through the whole twenty years of their married life.

The defendant denied all the charges except one. He admitted slapping her during the first year of the marriage, but testified that she had first assaulted him with a fire poker. His testimony represented the wife as morose, moody, capricious, and wanting to engage in fanciful enterprises beyond their means, and attributed her dissatisfaction to that state of mind. He testified that he had always contributed adequately to her support, or attempted to do so.

The plaintiff, in an action for alimony without divorce under G. S., 50-16, can recover only by showing the existence of such conditions as would authorize a divorce from bed and board under G. S., 50-16, or

absolute divorce, G. S., 50-5, *et seq.,* or certain other independent conditions named in G. S., 50-16. Abandonment is one of the conditions upon which the relief may be granted. When the husband by cruel treatment renders the life of the wife intolerable or puts her in such fear for her safety that she is compelled to leave the home, the abandonment is his, not hers. Although the conduct of the spouse may be such as to create a cause of action it may be condoned, or forgiven by the injured party, and become no longer a justiciable grievance. But a renewal of the misconduct may be such as to wipe out the condonation, revive the former offense, and restore its effectiveness in an action for relief. *Page v. Page,* 167 N. C., 346, 347, 83 S. E., 625; *Lassiter v. Lassiter,* 92 N. C., 130.

The trial court was advertent to the rule and took note of it in certain parts of the charge; but upon the second issue relating to abandonment, the right of the plaintiff to rely upon the cumulative effect of the years of mistreatment in leaving the husband's home seems to have been ignored and the answer to that issue was definitely poised upon a single segregated incident in the evidence.

The jury was instructed:

"If you are satisfied from the evidence and by its greater weight, that the defendant Frank Eggleston told his wife on the day she left, that morning, that he was going to kill her or wipe her out, and that she became afraid and felt that he would kill her and that she was afraid to stay there and felt that he would kill her and that she was afraid to stay there and on account of that, on account of what he said to her and the way he said it to her and what he did about it, if you are satisfied from the evidence and because of its greater weight that she left his home because she was put in fear by what he said and did that morning, by these words, it would be your duty to answer this issue Yes. If you are not so satisfied it would be your duty to answer it No."

The error is, we think, manifest.

It must be said that both upon this issue and upon the third issue relating to the indignities to her person claimed by the wife, the instructions were inadequate in not attempting to enlighten the jury upon the character of the provocative words or acts which might be sufficient to relieve the defendant from liability for enormities of the character appearing in evidence, or, for that matter, for any indignities which the wife might have suffered. The failure to do so is calculated to leave the impression on the jury that any departure from a perfect or equable temper or demeanor in word or act on her part might justify such aggression.

Because of the errors noted the plaintiff is entitled to a trial *de novo,* and it is so ordered.

The question of attorneys' fees and support *pendente lite* is within the discretion of the trial court and its action in the premises will not be reviewed.

New trial.