TRUDY BUCK GASKINS v. WILLIAM EARL GASKINS.

(Filed 28 February, 1968.)

**Divorce and Alimony § 16—**

A wife may establish a right to alimony under G.S. 50-16 by a showing that she was compelled to leave home in fear of her safety as a result of defendant's assaults and cruel treatment, and in such case the husband will be deemed to have abandoned the wife, but the weight and the credibility of the wife's evidence is a matter for the jury.

APPEAL by plaintiff from *Bundy, J.,* 25 September 1967 Regular Civil Session of PITT.

Plaintiff and defendant were married on 23 January 1947 and lived together until 27 November 1966, when plaintiff left the home which she and defendant had occupied with their three children, aged 19, 16, and 13 years. Plaintiff alleged, and offered evidence tending to show:

On the day of the separation, defendant, "in one of his not unusual fits of temper," assaulted and threatened to kill plaintiff. Their children, who were present, prevented him from choking her. During the altercation, defendant fell to the floor, where he lay, bleeding from his face and apparently unconscious, for a half hour. Plaintiff was unable to go to his assistance because she was "in worse fix than he was," and she was also afraid to touch him. Later in the day, defendant permitted his father to order her from the premises, thereby forcing her to make her home with her parents. Since then, defendant has contributed nothing to her support and has refused to allow her to return to the family residence. During the twenty years she lived with defendant, she worked both in the home and on his farm; she was in all respects a diligent and dutiful wife.

Defendant's allegations and evidence tended to show: He is a farmer. For several years he has been incapacitated by arthritis and unable to do manual labor. On Sunday, 27 November 1966, plaintiff had an argument with their eldest daughter in the kitchen. When he went in to quell the disturbance, his wife threatened him with a knife. After his son had disarmed her, she attempted to scratch defendant, who tried to push her away from him. She continued, however, to slap and scratch him, and he collapsed on the floor. Defendant's children called his father, who called plaintiff's parents. They came and took plaintiff away with them. Relations between plaintiff and defendant had been unsatisfactory for the preceding five years. She had assaulted him on "any number of times before." Notwithstanding, on Christmas day 1966, defendant asked plaintiff to return home, but she refused.

The marriage of the parties (which was admitted) was established by the jury's answer to the first issue. The second issue, which the jury answered No, embraced the controversy: "Did defendant wrongfully abandon the plaintiff and fail to provide her with necessary subsistence on and after November 27, 1966, as alleged in the complaint?"

There was no exception to the two issues submitted, and no others were tendered. From judgment decreeing "that plaintiff is not entitled to permanent alimony from defendant," plaintiff appealed.

STATE *v.* McCALL.

*Sam B. Underwood, Jr., for plaintiff appellant.*
*M. E. Cavendish for defendant appellee.*

PER CURIAM.   To establish her right to alimony under G.S. 50-16, plaintiff undertook to prove that defendant, by his assaults and cruel treatment, had put her in such fear for her safety that she was compelled to leave home. In such a situation, the abandonment would be his — not hers — and the judge so instructed the jury. *Bailey v. Bailey,* 243 N.C. 412, 90 S.E. 2d 696; *Caddell v. Caddell,* 236 N.C. 686, 73 S.E. 2d 923; *Eggleston v. Eggleston,* 228 N.C. 668, 47 S.E. 2d 243. The crucial question, therefore, was who abandoned whom. The jury, under proper instructions, answered the determinative issue against plaintiff.

We have carefully examined each assignment of error, and in the trial we find

No error.