I. TAYLOR CAMPBELL v. A. C. MILLER AND WIFE, RUTH MILLER.

(Filed 14 June 1968.)

**1. Partnership § 1—**

A partnership is an association of two or more persons to carry on as co-owners a business for profit. G.S. 59-36(a).

**2. Same—**

A partnership may be formed by an oral agreement, it being immaterial that the parties intend to reduce their agreement to writing at a later date.

**3. Same—**

A partnership is a partnership at will unless some agreement to the contrary can be proved.

**4. Partnership §§ 3, 9—**

The termination of a partnership at will by the election of a partner for any reason is not a breach of contract for which that partner may be held liable for damages resulting to his copartners.

**5. Same—**

Plaintiff and defendants entered an agreement to go into the meat packing business as a partnership and to construct a building for that purpose on defendants' land. Defendants agreed to provide the financing and plaintiff agreed to draw the building plans and to supervise and perform the construction, with families of plaintiff and defendants aiding in the construction and each family receiving $75.00 per week from a drawing account. *Held:* The parties created a partnership at will, and a termination of the partnership by one of the parties before completion of the building does not constitute a breach of contract for which that partner may be held liable in damages.

**6. Partnership § 9—**

Upon the dissolution of a partnership, it continues in existence until the winding up of its affairs is completed. G.S. 59-60.

**7. Same—**

Upon the dissolution of a partnership, the partners are responsible to each other for an accounting of partnership funds and properties.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Gwyn, J.,* at the February 1967 Session of DAVIE, docketed and argued at Fall Term 1967 as Case No. 442.

This is an action for damages for breach of contract, with a counterclaim by the defendants. The complaint alleges:

"In April, 1964, the plaintiff and the defendants entered into an agreement to go into the meat-packing and processing business as a partnership. * * * The agreement between the plaintiff and the defendants was that the plaintiff and the defendants would construct a building to be used for this business on * * * land * * * owned by the defendants. The defendants promised the plaintiff that if he would draw the floor plans for the building, see to it that the building and proposed operation met with the specifications of the North Carolina Health Department, devote his full time to the construction of

the building, and receive only $75.00 per week from a drawing account to be set up by the defendants during the construction of the plant, upon the completion of the construction of the plant and the equipping thereof, the plaintiff and the defendant A. C. Miller would operate the meat-packing and processing business as a partnership on a fifty-fifty basis with the partnership leasing the ground from the defendants and the building and equipment to belong to the partnership."

The complaint further alleges that the plaintiff drew floor plans for the building, obtained their approval by the North Carolina Health Department and assisted in the actual construction of the building until the defendants informed the plaintiff that they would not carry out their promise to operate in partnership with him and refused to permit him to perform his obligations under the contract, which he was ready, willing and able to do, by which breach of the contract the plaintiff was damaged.

The defendants filed a joint answer denying the material allegations of the complaint and alleging, as a further defense and counterclaim, that the plaintiff, after working upon the construction of the building for several weeks, informed the male defendant that he was quitting, stopped work, left the premises and never returned thereto. The answer further alleges that the plaintiff has been paid more than the amount due him for his work in the construction of the plant, that he fraudulently misrepresented to the defendants his past experience and abilities in construction work, which necessitated the hiring of others to perform work which the plaintiff had represented himself as able to do, whereby the defendants sustained damages for which they counterclaim.

The plaintiff filed a reply, denying all of the material allegations of the further answer and defense.

The plaintiff testified that prior to moving to North Carolina he had several years' experience in the operation of a slaughter house and meat processing plant in West Virginia. He was also an experienced carpenter. In March, 1964, Miller opened discussions with the plaintiff about their going into the slaughtering and meat processing business as partners on a "fifty-fifty" basis, Miller having had no experience in or knowledge of such business.

As to the agreement, the plaintiff testified:

"The terms with Mr. Miller was [sic] that we were going to do the work we could do and hire only what we had to hire. I told him I could draw the plans. * * * I told Mr. Miller that I would look after the cutting and processing and shipping

and for him to look after the killing * * *. It was necessary to have a building for this purpose. I had no property to pledge as security for this building although I was buying a home; I had no money to contribute either. All I had to contribute was my know-how. Mr. and Mrs. Miller were contributing money, borrowing money to contribute to the venture, which he and I both were going to pay back after the building was completed — he was to pay back 50 per cent and I was to pay back 50 per cent after the building was completed and we had it in operation; also we were to split the profits right down the middle after expenses were paid — I was to get 50 percent and he was to get 50 per cent of the profits. As to what I contributed toward the construction, it was my labor. * * * The agreement * * * was never reduced to writing. We had an oral agreement and when the building was completed, we were going to a lawyer and have a written agreement made by the lawyer, and at that time enter into a partnership agreement."

The plaintiff also testified that he, Miller and their teen-age children were to, and did, work together in the construction of the building on the land of the defendants. The original agreement was that the plaintiff and Miller would each be paid $100 a week for their work and that of their respective families but, by consent, this was reduced to $75 per week. The agreement was that the defendants would lease the land upon which the building was to be built to the partnership "for as long as we wanted it."

As to what was done under the agreement; the plaintiff testified: He prepared or supervised the preparation of plans for the proposed building and obtained their approval by the Health Department. The defendants then borrowed $28,000 for the construction of the building, the plaintiff signing no note and incurring no obligation for the repayment of the loan. Construction began and continued for 14 weeks, to 25 August 1964, at which time the building was within about four weeks of completion in accordance with the plans. Both families worked in the construction of the building. For this the plaintiff was paid $1,500. [The amount due him at the agreed rate of $75 per week for the 14 weeks was $1,050.]

As to the alleged breach of the contract by Miller, the plaintiff testified: On 25 August 1964, the plaintiff, after working on the building all day, was at his home with his wife in the evening, waiting for a telephone call about a relative seriously ill in another state. At Miller's request, he returned to the construction project in order to take to Miller a power drill, which belonged to Miller and with which Miller was going to do work on the building. He told Miller

that, as soon as the telephone call came through, he and his wife would come back to the building and work on it. Thereupon, Miller said, "The thing for you to do is get your stuff and get out of here." Thereupon, the plaintiff collected his tools and left the premises. He had no intention of returning and never returned, although at that time he was ready and willing to continue the contract. When he left the building he told Miller, "Let's get together and settle up." He "figured" the agreement between him and Miller was "finished."

The material evidence of the defendants was to the following effect:

At the time of their original negotiations, the plaintiff told Miller that he could do the construction work and was qualified to buy, process and sell meat. They then decided to go into the business, the plaintiff to be the manager, meat cutter and salesman, Miller to do the buying and supervise the slaughtering. Mr. and Mrs. Miller borrowed the money for the proposed construction, signing a note secured by mortgage on their farm. It was agreed that the plaintiff, Miller and their children would work upon the construction of the building and for the work of all of them, the plaintiff and Miller would each draw $75 per week. The plaintiff received substantially more, including an advance of $200 requested by him on the last day he worked on the project, 25 August 1964.

Prior to that date there was no disagreement. A few days earlier the plaintiff told Miller that he had learned, through the conversation of the children of the two families, that Miller did not intend that he and the plaintiff would be partners in the business. Miller, thereupon, assured the plaintiff that he intended to proceed as originally planned.

On the evening of 25 August 1964, Miller had a plumber at the plant to install the contemplated plumbing. Miller phoned the plaintiff, requesting him to bring Miller's drill to the plant for use in the plumbing work, which the plaintiff did. Miller assumed the plaintiff was going to help with the work, but the plaintiff stated that he had to make a telephone call. Miller suggested that he use the telephone at the plant but the plaintiff refused, saying he would not be back any more that evening. Miller then said, "It looks to me like you ought to help us while we got a man to lay out the work for us." The plaintiff then said, "Well, if that's the way you feel about it and won't let me take off, I'll just take my tools and leave." Miller tried to get the plaintiff to stay and help with the work but he would not and "grabbed up his tools and left." He never returned. Miller did not tell him to quit or to get off the premises, or prohibit him from coming back. At no time after he left did the plaintiff advise

Miller that he was ready, willing and able to continue with the agreement.

Prior to this undertaking, Miller had never been in the meat business. He intended, as previously agreed, that after the business was open for operation the plaintiff would draw up a contract specifying their respective duties and rights. It was contemplated that after the building had been paid for any remainder would be divided between the plaintiff and Miller equally.

Miller now has between $60,000 and $75,000 invested in the building and equipment. After the plaintiff left, Miller employed a man to help him finish the building and when the business was opened he had to employ a meat cutter and butcher. Miller sold his home and other property, investing the proceeds in the business. He has operated at a loss since the business opened. On the day the business opened, the indebtedness was $50,000. After the plaintiff left the project, it was necessary to expend $5,300 for labor on the building in the performance of work which the plaintiff and Miller had agreed would be done without the necessity of outside labor. In 1965, the Millers took $3,600 out of the business and, in 1966, approximately $4,600.

The following issues were submitted to the jury:

"1. Did the plaintiff and defendants enter into a contract whereby the plaintiff and defendants were to engage in meat-processing on a partnership basis, and whereby, in order to prepare for the business venture, the defendants agreed to furnish the land and provide for the financing and the plaintiff agreed to draw the plans, supervise and otherwise do the construction of the building, the families, including the children of both plaintiff and defendants to perform work in the construction of the building and each family to receive from a subsistence fund the sum of $75.00 per week, as alleged in the Complaint?

ANSWER: Yes.

"2. Did the defendants breach the contract, as alleged in the Complaint?

ANSWER: Yes.

"3. What amount, if anything, is the plaintiff entitled to recover?

ANSWER: $9,333.24.

"4. Did the plaintiff breach the contract, as alleged in the Answer?

ANSWER:   ................."

"5. What amount, if anything, are the defendants entitled to recover?
ANSWER: ............."

The court instructed the jury to answer the first issue "Yes" if the jury found the facts to be as the evidence tends to show. The jury so answered that issue. It also answered the second issue "Yes" and the third issue "$9,333.24." It did not answer Issues No. 4 and 5. From a judgment entered in accordance with the verdict, the defendants appeal, assigning as error certain rulings on the admission of evidence, the denial of their motion for judgment of nonsuit at the close of all the evidence, and certain portions of the charge of the court to the jury.

*Booker and Sapp for defendant appellants.*
*William E. Hall for plaintiff appellee.*

LAKE, J. It is clear from the evidence introduced by the plaintiff that he and the defendants entered into an agreement substantially in accordance with the allegations of the complaint. Indeed, this is not controverted by the defendants. The effect of that agreement was to bring into existence a partnership to operate a meat packing business and to construct upon the land of the defendants a building in which that business would be operated. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." G.S. 59-36(a). The agreement in question was very similar to the one involved in *Fertilizer Co. v. Reams,* 105 N.C. 283, 11 S.E. 467, where Shepherd, J., speaking for this Court, said:

"In our case, the usual elements of partnership are present. Morehead advances the capital, and Reams is to contribute the services to the joint undertaking, which is the purchase and sale of tobacco. No personal liability is contracted by Reams for the money advanced, and the said capital is to be paid out of the partnership stock, and the balance, after the payment of expenses, &c., is to be equally divided as profits between the parties. This, in our opinion, constitutes a partnership * * *"

It is immaterial that the parties intended to reduce their agreement to writing at a later date. A partnership may be formed by an oral agreement. *Eggleston v. Eggleston,* 228 N.C. 668, 47 S.E. 2d 243. That the parties understood the partnership was already in existence prior to the completion of the building, and prior to the reduction of their agreement to writing, is shown by the plaintiff's testimony, "I wasn't working with Mr. Miller as a laborer but as a partner."

CAMPBELL *v.* MILLER.

There is nothing whatever in the record to indicate any agreement between the parties that their partnership was to continue for a specified term. On the contrary, the plaintiff testified that their understanding was that the site of the building would be leased to the partnership by the defendants "for as long as we wanted it." A partnership is a partnership at will unless some agreement to the contrary can be proved. Lindley on Partnerships, 10th ed., ch. 8, p. 170; 68 C.J.S., Partnership, § 62; 40 Am. Jur., Partnership, § 233.

"The significance of the partnership being one at will, *i.e.*, without any definite term or undertaking to be accomplished, is that the termination by the election of a partner is not a breach of contract. Having the legal right to terminate, it would seem that there is no liability for its exercise whatever the motive, and whatever may be the injurious consequences to co-partners, who have neglected to protect themselves by an agreement to continue for a definite term." Crane on Partnerships, 2d ed., § 74(b). "According to the majority view, the only difference, so far as concerns the rights of dissolution by one partner, between a partnership for an indefinite period and one for a specified term is that in the case of a partnership for a definite term a dissolution before the expiration of the stipulated time is a breach of agreement which subjects such partner to a claim for damages for breach of contract if the dissolution is not justified, whereas the dissolution of a partnership at will affords the other partner no ground for complaint; in either case the action of one partner actually dissolves the partnership." 40 Am. Jur., Partnership, § 236. Similarly, in 68 C.J.S., Partnership, § 108, it is said, "In view of the rule * * * that a partner may exercise his right to dissolve a partnership at will for any reason which he deems sufficient, or even arbitrarily, he is not liable for damages which have resulted to his copartners by reason of such action." The Uniform Partnership Act, G.S. 59-61, provides that dissolution of the partnership is brought about "without violation of the agreement between the partners * * * by the express will of any partner when no definite term or particular undertaking is specified."

It is apparent from the testimony of the plaintiff that, pursuant to the agreement, he and his children, together with Miller and his children, worked upon the construction of the building, which was to house the proposed business, for a total of 14 weeks and drew therefor from the partnership $1,500. He testified that for this work the agreement originally was that he would draw $100 per week, but this was changed, by consent, to $75 per week. Under any view of the agreement, the plaintiff has shown no breach of it in this respect since he drew more than $100 per week.

The plaintiff's contention that the agreement was broken. by Miller's termination of the association is equally without foundation. The only evidence of termination of the association is that there was a disagreement between the plaintiff and Miller on 25 August 1964, resulting from the plaintiff's refusal to remain at the plant for work that evening. As a result, according to the plaintiff's testimony, Miller said, "The thing for you to do is to get your stuff and get out of here." Thereupon, the plaintiff, without comment, gathered up some of his tools and left, never to return. This is slender evidence upon which to rest a finding that Miller dissolved the partnership. It strongly suggests that the plaintiff, who had that day received an advancement of $200 against his drawing account, had tired of the association and took the first opportunity to dissolve it. Be that as it may, the partnership was a partnership at will and, if Miller dissolved it, he did not break the agreement thereby. There is, therefore, no evidence whatever in the record to show a breach of contract by Miller and, consequently, it was error to deny the defendants' motion for judgment of nonsuit, this being an action to recover damages for breach of contract. This being true, it is not necessary to consider the remaining assignments of error by the defendants.

For the same reason, if it be true, as the defendants allege, that the plaintiff dissolved the partnership by his action on 25 August 1964, he did not thereby violate any right of the defendants, and their counterclaim on the ground of breach of the contract by him is without merit. The defendants offered no evidence to support their allegation that the plaintiff fraudulently misrepresented his past experience and qualifications. Consequently, the defendants are not entitled to recover of him upon their allegations of breach of contract and deceit.

Upon the dissolution of a partnership, it continues in existence until the winding up of its affairs is completed. G.S. 59-60. Our decision that the plaintiff is not entitled to recover in this action for breach of contract and that the defendants are not entitled to recover upon their counterclaims for breach of the same contract and for deceit in its procurement is without prejudice to the right of either, if so advised, to seek an accounting for partnership funds and properties as of the date of the dissolution of the firm. See: *Pentecost v. Ray,* 249 N.C. 406, 106 S.E. 2d 467; *Moseley v. Taylor,* 173 N.C. 286, 91 S.E. 1035; G.S. 59-52.

The judgment of the superior court is hereby reversed, and the cause is remanded for the entry of a judgment of nonsuit as to the

plaintiff's cause of action and as to the counterclaim of the defendants.

Reversed and remanded.

HUSKINS, J., took no part in the consideration or decision of this case.