DOROTHY L. M. POTTER v. THE HOMESTEAD PRESERVATION ASSOCIA-
TION, HERMAN I. BRETAN, AND WILLIAM BRETAN

No. 146A90

(Filed 10 January 1992)

**1. Appeal and Error § 422 (NCI4th) — appellee's presentation
of additional questions — purpose of Rule 28(c)**

The purpose of N.C. R. App. P. 28(c) is to permit an
appellee who obtains relief at trial to seek a new trial because
of trial errors material to the claim upon which relief was
granted in lieu of having judgment n.o.v. entered on appeal
when such relief is sought by the appellant. Therefore, plaintiff
could invoke Rule 28(c) only if she were arguing trial error
material to her *quantum meruit* claim which she successfully
prosecuted at trial but could not invoke that rule on her claim
for breach of contract which she lost in the trial court.

**Am Jur 2d, Appeal and Error §§ 184, 185.**

**2. Appeal and Error § 32 (NCI4th) — consideration of question
by Supreme Court — suspension of appellate rule — exercise of
supervisory jurisdiction**

Although plaintiff appellee failed to cross-assign as error
pursuant to N.C. R. App. P. 10(d) the trial court's entry of
a directed verdict for defendants on her claim for breach of
an oral partnership agreement to develop land, the Supreme
Court invoked Appellate Procedure Rule 2 and exercised its
supervisory power over the trial divisions to consider whether
plaintiff is entitled to a new trial on her breach of contract
claim where the record reflects that plaintiff's contract claim
was dismissed because the trial court erroneously assumed,
as did plaintiff, that plaintiff was barred by the statute of
frauds from recovering on that claim, and without that er-
roneous assumption plaintiff would have been entitled to pur-
sue at trial her remedies under the law of partnership.

**Am Jur 2d, Courts §§ 111, 116, 117.**

**3. Partnership § 1.1 (NCI3d) — showing partnership by conduct**

Even without proof of an express agreement to form a
partnership, a voluntary association of partners may be shown
by their conduct.

POTTER v. HOMESTEAD PRESERVATION ASSN.

[330 N.C. 569 (1992)]

Am Jur 2d, Partnership § 205.

4. **Partnership § 1.1 (NCI3d); Frauds, Statute of § 6.1 (NCI3d)— oral partnership agreement—land development—statute of frauds inapplicable**

An oral partnership agreement to develop and sell real property is not within the statute of frauds.

Am Jur 2d, Partnership § 98.

5. **Partnership § 1.2 (NCI3d)— oral partnership agreement to develop land—breach of contract—sufficiency of evidence**

Plaintiff's evidence was sufficient for the jury to find that plaintiff and defendants entered into an oral partnership agreement to develop and sell land and that defendants breached this agreement where it tended to show that plaintiff and defendants agreed to develop two tracts of land as partners; each partner was to own a one-fourth interest in the tracts and profits from the sales; one tract was sold and the proceeds were divided on this basis; plaintiff performed various services to enhance, manage and market both tracts; plaintiff expected no remuneration for these tasks because her rendering of these services was her contribution to the partnership; and defendants refused to share with plaintiff the profits from the sale of the second tract.

Am Jur 2d, Partnership § 233.

6. **Partnership § 3 (NCI3d)— oral partnership—recovery of share of profits—remedies**

A copartner may pursue any appropriate legal or equitable remedy to recover his proportionate share of the profits of an oral partnership. These remedies include an action for breach of contract or dissolution, winding up, and distribution of partnership assets under North Carolina's Uniform Partnership Act. In the event remedies under the law fail to give relief, a partner may be entitled to pursue a partnership interest through such remedies in equity as an equitable lien based upon fraud or an equitable trust based upon unjust enrichment.

Am Jur 2d, Partnership §§ 560 et seq.

7. **Partnership § 3 (NCI3d); Quasi Contracts and Restitution § 1.1 (NCI3d) — contributions to partnership — express contract — quantum meruit**

A partner who can establish an oral partnership agreement governing real property is not entitled to recover in *quantum meruit* but is limited to remedies afforded under partnership law. Should plaintiff fail to prove the existence of an express contract, he or she is not foreclosed from recovery in *quantum meruit* if a contract can be implied and the reasonable value of plaintiff's services can be drawn from the evidence.

**Am Jur 2d, Partnership §§ 560, 571.**

ON appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 97 N.C. App. 454, 389 S.E.2d 146 (1990), finding no error in an order entered out of session by consent on 29 December 1988 by *Briggs, J.*, following trial during the 31 October 1988 session of Superior Court, YANCEY County. Heard in the Supreme Court 11 December 1990.

*Norris and Peterson, P.A., by Staunton Norris and Allen J. Peterson, for defendant-appellants.*

*Moore, Lindsay & True, by Stephen P. Lindsay, for plaintiff-appellee.*

EXUM, Chief Justice.

The principal issue presented in this appeal is whether a partner who can establish an oral partnership agreement governing real property is entitled to recovery in *quantum meruit* for her contributions to the partnership. We hold that she is not. Her remedies are limited to those afforded her under partnership law.

This is an action for breach of a partnership agreement allegedly governing two tracts of land and, in the alternative, recovery in *quantum meruit*. As to one tract the trial court entered a directed verdict against plaintiff but submitted her *quantum meruit* claim to the jury. We conclude (1) the trial court erred in directing a verdict against plaintiff; (2) plaintiff's claim for breach of the partnership agreement should have been submitted to the jury; and (3) if plaintiff can establish the partnership agreement and its breach

for the fact finder, she may not rely on the doctrine of *quantum meruit.*

In a complaint filed 28 August 1987 plaintiff alleges an oral partnership agreement with defendants to develop two tracts of land in Yancey County, one consisting of 400 acres, the other of 700 acres. Among plaintiff's claims for relief are breach of contract (the partnership agreement) and recovery in *quantum meruit* for services rendered in locating, developing, and marketing both tracts.

At trial, plaintiff presented evidence tending to show the following:

In 1971 plaintiff, who held an option to buy both tracts, agreed with defendants Herman and William Bretan to develop both tracts on a partnership basis. A fourth partner, Milton Wind, was subsequently included in the partnership. Each partner was to own one-fourth interest in the property and profits from sales. Each had particular responsibilities: Herman Bretan was to handle the "legal part," William Bretan and plaintiff were to market lots or "memberships," and Mr. Wind was to provide capital. In April 1971 both parcels were sold to Caisse Corporation, represented to plaintiff as defendants' "holding company."

The 400-acre parcel was sold on 16 November 1983 by Caisse Corporation for $260,000. Three of the partners—plaintiff, William Bretan, and Mr. Wind—met on 31 December 1983 to discuss the division of the sales proceeds. From the sales proceeds William Bretan deducted $52,000 to pay off the mortgage; $68,000 to "repay" Herman Bretan; $35,000 to restore a house on the 700-acre tract; and $10,000 for a timber cruise. William Bretan was to get $25,000 as a bonus for selling the land, and $40,000 was retained in a "war chest" for any legal fees incurred regarding the remaining property. This accounting left $10,000 for each of the three partners present at the meeting.

The 700-acre parcel was transferred in March 1972 to Homestead Preservation Association, a nonprofit corporation·formed in 1971 by Herman Bretan. The partnership agreed to divide the acreage into 100 one-acre lots; the remainder was to be roads and common area. Plaintiff was titular president. Proceeds from the sale of the lots or "memberships" were deposited into "The Dorothy Potter Trust Account," to which plaintiff had no access. Plaintiff alleges she spent six to seven months every spring and summer over

POTTER v. HOMESTEAD PRESERVATION ASSN.

[330 N.C. 569 (1992)]

the next twelve years showing, promoting, developing, and improving the 700-acre tract and its buildings, but was never compensated therefor.

In addition, plaintiff testified she wrote to the Bretans on 20 June 1984 as president of the Association, requesting a meeting be called and a full accounting be given of the property and its funds. On 24 August 1984 she again wrote, asking for a list of Association members and their mailing addresses and stating that, as president, she was calling for an annual meeting to be held after Thanksgiving. By letter dated 27 August 1984, Herman Bretan informed plaintiff she had been relieved of the office of president by vote of the board of directors and that she had been removed as director of the Association by action of the membership.

The trial court entered directed verdicts in favor of defendant Homestead Preservation Association and in favor of the individual defendants on all plaintiff's claims except those based on breach of contract regarding the 400-acre parcel and *quantum meruit* regarding the 700-acre piece. Restricted to consideration of these two claims, the jury found the Bretans had breached a contract under which plaintiff was to receive one-fourth of the net profits from the sale of the 400-acre tract, entitling her to $12,500. It found in addition that she had rendered valuable services to the individual defendants relative to the 700-acre tract, for which she was entitled to recover $200,000. The trial court entered judgment accordingly, but allowed defendant's motion for a remittitur of the $200,000, reducing it to $110,000 because the award was contrary to the trial court's instructions that lost profits could not be considered on that claim.

The Court of Appeals held, first, defendants had failed to raise at trial or to make the subject of an assignment of error their contention that plaintiff's services with regard to the 700-acre tract had necessarily been for the benefit of the tract owner, the Association, rather than for them personally. Thus the issue was not properly before the appellate court, N.C. R. App. P. 10(b). The Court of Appeals nonetheless concluded that the argument was meritless because plaintiff's evidence tended to support her allegations that the Association was in effect the *alter ego* of defendants and that services rendered regarding the property, which "defendants now treat . . . as their own," benefited them. 97 N.C. App. at 460, 389 S.E.2d at 149. Second, plaintiff's claims were not barred by

the statute of limitations because her cause of action accrued on 27 August 1984, when she was notified by Herman Bretan that her association with the Bretans was terminated. Third, the evidence supported the jury's verdict for $12,500 lost profits from the sale of the 400-acre tract, and "would support one much higher" since William Bretan's accounting erroneously included unauthorized deductions. *Id.* at 460, 389 S.E.2d at 150. Fourth, the evidence "well supported" the $110,000 award for plaintiff's services and responsibilities on behalf of the Association, even though the evidence included no estimations of the numbers of days and hours worked nor of the monetary value of the services performed, because plaintiff's "services and responsibilities were limited only by the calendar and should be paid on that basis." *Id.* at 461, 389 S.E.2d at 150.

> The law does not require courts or jurors to be oblivious to what is commonly known by others, and it is a matter of common knowledge that the nation has a minimum wage law; that virtually no one, including the unskilled, works for less than that; that any kind of regular service performed over a long period of time has substantial value; and that reliable managerial, caretaking and promotional services requiring constancy, initiative, judgment, and the ability to deal with and direct others is several times more valuable still.

*Id.*

Judge Greene, concurring in part and dissenting in part, disagreed only with the award based on *quantum meruit*, opining plaintiff's evidence of the reasonable value of her services "consisted of extremely general statements about the nature of the services and of a time period during which they allegedly occurred." *Id.* at 463, 389 S.E.2d at 151. Plaintiff offered no evidence as to her skill, knowledge, the time spent, or the customary rate of compensation for such services. The dissent specifically rejected supplanting such proof with "common knowledge" of such facts as the minimum wage law. In addition, plaintiff failed to offer evidence that her services were "accepted and appropriated" by the defendants. *Id.*

The only question before us is the propriety of the *quantum meruit* award, which the Court of Appeals affirmed by divided vote.

In her brief before this Court plaintiff argues that the evidence supports a partnership agreement between herself and the Bretans

POTTER v. HOMESTEAD PRESERVATION ASSN.

[330 N.C. 569 (1992)]

and that her claim for relief based on breach of contract regarding the 700-acre parcel was erroneously dismissed by the trial court. Plaintiff objected to the trial court's refusal to submit this issue to the jury, but she did not appeal from the verdict and judgment because it was favorable to her.

Without taking an appeal, a plaintiff is nevertheless entitled to "cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order or other determination from which appeal has been taken." N.C. R. App. P. 10(d). Plaintiff now argues the trial court erroneously entered a directed verdict on her breach of contract claim regarding the 700-acre parcel, but she failed to cross-assign error to that determination. The scope of this Court's review is confined to consideration of the assignments of error set out in the record on appeal. N.C. R. App. P. 10(a).

[1] Plaintiff proposes that the proper theory of recovery under the circumstances of this case is an equitable trust to prevent defendants' unjust enrichment. Plaintiff invokes N.C. R. App. P. 28(c), as authorization for her argument that, despite having made no cross-assignments of error, she is entitled to a new trial on the issue of damages, based on this theory of recovery.

Rule 28(c) provides, in pertinent part:

> Without having taken appeal or made cross-assignments of error, an appellee may present the question, by statement and argument in his brief, whether a new trial should be granted to the appellee rather than a judgment n.o.v. awarded to the appellant when the latter relief is sought on appeal by the appellant.

N.C. R. App. P. 28(c).

Under the circumstances of this case, Rule 28(c) would apply only to those claims upon which plaintiff has prevailed in the trial court. Appellate review of the dismissal of a claim is preserved by cross-assignment of error under N.C. R. App. P. 10(d). The purpose of cross-assignments of error is "[to protect] appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based."

*State v. Wise*, 326 N.C. 421, 428, 390 S.E.2d 142, 146 (1990) (quoting *Carawan v. Tate*, 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982). The purpose of Rule 28(c) is to permit an appellee who obtains relief at trial to seek a new trial because of trial errors material to the claim upon which relief was granted in lieu of having judgment n.o.v. entered on appeal when such relief is sought by the appellant. Here, plaintiff could invoke Rule 28(c) only if she were arguing trial error material to her *quantum meruit* claim which she successfully prosecuted at trial. She may not invoke that rule on a claim for breach of contract which she lost in the trial court.

[2] Nevertheless, this Court may suspend the requirements of any of the Rules of Appellate Procedure, including Rule 10(d), to prevent manifest injustice to a party. N.C. R. App. P. 2. Here, the record reflects plaintiff's contract claim regarding the 700-acre tract was dismissed because the trial court erroneously assumed, as did plaintiff, that plaintiff was barred by the statute of frauds from recovering on that claim. But for this erroneous assumption plaintiff would have been entitled to pursue at trial her remedies under the law of partnership. We conclude this case calls for the invocation of Appellate Procedure Rule 2 and the exercise of this Court's supervisory power over the trial divisions. N.C. Const. art. IV, § 12(1). We consider, therefore, whether plaintiff is entitled to a new trial on her breach of contract claim. We conclude that she is.

[3] "A contract, express or implied, is essential to the formation of a partnership." *Eggleston v. Eggleston*, 228 N.C. 668, 674, 47 S.E.2d 243, 247 (1948) (quoting 40 Am. Jur. *Partnership* § 20 (1942) ). "A partnership may be formed by an oral agreement." *Campbell v. Miller*, 274 N.C. 143, 149, 161 S.E.2d 546, 550 (1968). Even without proof of an express agreement to form a partnership, a voluntary association of partners may be shown by their conduct. *Eggleston v. Eggleston*, 228 N.C. at 674, 47 S.E.2d at 247. A finding that a partnership exists "may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such."

> [A] course of dealing between the parties of sufficient significance and duration . . . along with other proof of the fact [may] be admitted as evidence tending to establish the fact of partnership, provided it has sufficient substance .and definiteness

to evince the essentials of the legal concept, including, of course, the necessary intent.

*Id.*

[4] Property acquired by purchase or otherwise on account of the partnership is partnership property, as is property acquired with partnership funds, unless a contrary intention appears. N.C.G.S. § 59-38(a), (b) (1989). Partnership property may be held and conveyed by fewer than all partners. *See* N.C.G.S. § 59-40 (1989). A partner's interest in partnership assets — including real property — is a personal property interest. N.C.G.S. § 59-56 (1989); *Bright v. Williams*, 245 N.C. 648, 651, 97 S.E.2d 247, 250 (1957). As such, it is not subject to the statute of frauds.

> [T]he general rule supported by the great preponderance of the authorities on the subject is that a parol partnership agreement or joint enterprise entered into by two or more persons for the express purpose of carrying on the business of purchasing and selling real estate, or interests therein, for speculation, the profits to be divided among the parties, is not within the statute of frauds relating to the sale of land or an interest in lands. In other words, such an agreement may be entered into, become effectual, and be enforced although not in writing.

72 Am. Jur. 2d *Statute of Frauds* § 73 (1974). *Cf. Ludwig v. Walter*, 75 N.C. App. 584, 331 S.E.2d 177 (1985) (when land is owned individually by one *entering* the partnership, that property cannot become a partnership asset absent some written agreement sufficient to satisfy the statute of frauds).

[5] Plaintiff presented evidence as to the formation and provisions of an oral partnership agreement and of partnership conduct — including the division of proceeds from the sale of the 400-acre parcel — corroborating that agreement. This evidence was buttressed, in addition, by plaintiff's, Mr. Wind's, and others' testimony detailing the services plaintiff performed to enhance, manage, and market both tracts. Plaintiff also testified she expected no remuneration for these tasks because her rendering these services was her contribution to the partnership. That such contributions are not monetary or that she did not hold a deed to either tract is immaterial to plaintiff's status as partner.

[I]t is not necessary to a partnership that property or capital involved in it should belong in common to the parties to the contract. On the contrary, a familiar type of partnership . . . occurs where the services of the one party is balanced against the capital furnished by the other; and the statement that the property must be held in common before plaintiff can recover is error.

*Eggleston v. Eggleston*, 228 N.C. at 677, 47 S.E.2d at 249.

We hold the evidence and the law support plaintiff's allegation that she was a partner holding a one-fourth interest in the 700-acre tract of land and that this theory of the case should have been submitted to the jury.

[6] Under the rule that a parol partnership agreement is enforceable, a "copartner or joint venturer may pursue any appropriate legal or equitable remedy to recover his proportionate share of the profits of such undertaking," 72 Am. Jur. 2d *Statute of Frauds* § 73 (1974). These remedies may include an action for breach of contract or dissolution, winding up, and distribution of partnership assets under North Carolina's Uniform Partnership Act. *See generally* N.C.G.S. §§ 59-59 through -73 (1989); *Bright v. Williams*, 245 N.C. at 651, 97 S.E.2d at 250. In the event remedies under the law fail to give relief, a partner may be entitled to pursue a partnership interest through such remedies in equity as an equitable lien based upon fraud or an equitable trust based upon unjust enrichment. *See, e.g., Lewis v. Boling*, 42 N.C. App. 597, 257 S.E.2d 486 (1979) (plaintiff partner's evidence sufficient to show grounds for imposing constructive trust on conveyed partnership property). The partner's right to such equitable remedies, however, "does not exist for any practical purpose until the affairs of the partnership have to be wound up, or the share of a partner has to be ascertained. Such a lien based on fraud does not come into existence until actual dissolution occurs." *Wolfe v. Hewes*, 41 N.C. App. 88, 91, 254 S.E.2d 204, 206 (1979) (citation omitted). In other words, plaintiff must pursue her legal remedies first.

*Quantum meruit*, a measure of recovery for the reasonable value of material and services rendered by the plaintiff, is an equitable remedy based upon a contract implied in law. *Thormer v. Lexington Mail Order Co.*, 241 N.C. 249, 252, 85 S.E.2d 140, 143 (1954). *Quantum meruit* is not an appropriate remedy when the plaintiff has alleged an express, oral contract.

[7] Should plaintiff be able to establish for the fact finder the existence of a partnership agreement with reference to the 700-acre tract, she has adequate legal remedies under the law of partnership. In that event she would be precluded from invoking the equitable doctrine of *quantum meruit*. Should she fail to prove the existence of an express contract, she is not foreclosed from recovery in *quantum meruit* if a contract can be implied and the reasonable value of her services can be drawn from the evidence. *E.g., Flying Service v. Martin,* 233 N.C. 17, 20, 62 S.E.2d 528, 530 (1950) ("One may sue on an express contract and recover on an implied contract unless the allegation is such as to mislead the defendant.").

The trial court erred in entering a directed verdict for defendant on plaintiff's claim for breach of the partnership agreement with regard to the 700-acre tract. That claim should have been submitted to the jury for determination. If the jury determines there was a partnership agreement as plaintiff has alleged and offered evidence to prove and that defendants breached the agreement, plaintiff would be entitled to all the relief the law of partnership allows. We accordingly reverse the Court of Appeals decision insofar as it affirmed the *quantum meruit* award, vacate the trial court's judgment on plaintiff's *quantum meruit* award, and remand the case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.