**Michael LAYMAN d/b/a Mountain Pride Bait and Trees,
Plaintiff,**

v.

**C.C.F. OF GEORGIA, INC., Defendant.**

**No. 1:00CV78–C.**

United States District Court,
W.D. North Carolina,
Asheville Division.

April 12, 2001.

Larry T. Reida, Killian, Kersten & Patton, Waynesville, NC, for plaintiff.

John L. Taylor, Jr., Jeff T. Coleman, Vincent, Chorey, Taylor & Feil, Atlanta, GA, George Ward Hendon, Martin K. Reidinger, Adams, Hendon, Carson, Crow, & Saenger, PA, Asheville, NC, for defendants.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendant's Motion for Summary Judgment and Motion to Strike Plaintiff's Expert Designation of Sam Underwood. Plaintiff responded to those motions on March 19, 2001. For the reasons discussed below, the court will grant defendant's Motion for Summary Judgment and deny, without prejudice, as moot its motion to strike.

The facts underlying defendant's Motion for Summary Judgment are fairly and accurately set forth in its supporting Memorandum of Law and are briefly summarized herein to aid the process of review. This action concerns an alleged contract for the provision of Christmas trees by plaintiff (a broker of Christmas trees) to defendant (a wholesaler of Christmas trees), in partial fulfillment of defendant's exclusive arrangement with Wal–Mart and Home Depot stores in the Atlanta area during the 1999 Christmas season. It is undisputed that defendant supplied in excess of 55,000 Christmas trees during that season and that plaintiff committed early in the season to supply 46,200 of those trees. In securing defendant's patronage for the 1999 season, plaintiff *forged* a contract between himself and a well-known grower of Christmas trees, indicating he had a commitment for 46,200 trees, for the price of $399,000, and that a deposit of $80,000 was required in March 1999 to hold those trees. Based upon such representations and documents supplied by plaintiff, defendant secured a line of credit and paid over to plaintiff the sum of $92,500 for purpose of paying to the grower the required deposit and other related deposits.

Plaintiff has conceded in his deposition that the contract with the grower was completely bogus and that he forged the grower's signature. Rather than using the funds to pay any deposit on any trees, plaintiff admits that he used the funds for his own purposes, such as paying off debts from the 1998 Christmas tree season, paying dues for a hunting lodge, and building a new home. He further admits in his deposition that he in fact has no contract with defendant. Even so, it is his contention that he is owed $220,000 on the nonexistent contract, which, if it did exist, would have been based, as he admits, on blatant acts of fraud and, perhaps felonious conduct, in violation of the laws of the United States. Plaintiff seeks to recover based on theories of breach of contract and *quantum meruit*. The court notes, however, that exhibits annexed to *plaintiff's* response indicate that money is due and owing *defendant* based on plaintiff's misrepresentations and fraud.

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original)

(quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of a defendant's motion for summary judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

 Sitting with diversity jurisdiction in accordance with 28, United States Code, Section 1332, this court applies the law of the forum state. North Carolina law is clear in circumstances such as those presented here: plaintiff is entitled to absolutely no relief. Plaintiff has filed a response which, while setting forth the summary-judgment standard, cites no authority in opposition to defendant's substantive argument that plaintiff's claims are barred as a matter of law. Indeed, plaintiff's arguments at page four of his brief are not responsive in any manner to the serious arguments made by defendant. Plaintiff argues, as follows:

> Admittedly, the Defendant is entitled to some deductions for the 1999 season that it is was not entitled to in prior years. Plaintiff frankly admits that he requested and received a $92,500.00 advance 6 weeks early. Defendant should receive interest on that sum for 6 weeks but not on $805,000.00 for the entire season as it contends.
>
> Defendant is not entitled to deduct for such items of expense as a bottle of wine and Refrow's [defendant's] wife's expenses. . . .
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Two wrongs do not make a right. The Plaintiff should not have requested his advance six weeks early nor in the fashion that he did. What impact that should have has yet to be determined. However, the Defendant should not be allowed to profit to the tune of approximately $200,000.00 from Plaintiff's actions. The Court will have to determine based upon the evidence at the time of trial whether Exhibit 8, Exhibit 9 or some other basis constitutes a fair accounting between the parties.

Plaintiff's Response, at 4–5. Plaintiff has missed the point of defendant's motion, which is that he cannot come to this court and seek "a fair accounting" based upon a fraudulently, if not criminally, induced contract. Defendant has presented evidence, in the form of plaintiff's own sworn testimony, that (1) no contract in fact existed, and (2) even if a contract was formed, it is void *ab initio* based upon plaintiff's fraud and, perhaps, criminal misconduct.

 Plaintiff's second cause of action is for *quantum meruit*, which is equitable

relief. In North Carolina, one who comes to the court with unclean hands is barred from any equitable relief. *Sherner v. Sear*, 92 N.C. 148 (1885); *Swan Quarter Farms. Inc. v. Spencer*, 133 N.C.App. 106, 109–10, 514 S.E.2d 735, 738 (1999).

> Equity is for the protection of innocent persons and is a tool used by the court to intervene where injustice would otherwise result.

*Swan Quarter Farms*, supra, at 110, 514 S.E.2d 735. Plaintiff admits and has not rebutted in his response facts that establish that he comes to this court with unclean hands. Plaintiff created a document on which he forged the signature of a representative of Bear Wallow Farms, then misappropriated to his own use monies defendant paid to him in trust. The undisputed facts of record reveal that plaintiff's *quantum meruit* claim is based upon fraud, while review of well-settled case law reveals that such fraud bars plaintiff from seeking equitable relief based on his unclean hands. Summary judgment will be granted to defendant on this claim.

■ Plaintiff has also asserted a contract claim, which is barred because (1) he testified that there was no contract, and (2) he admits to a material breach of any such contract. In either event, he is barred from recovering thereon. The undisputed testimony of plaintiff reveals that there was no contract between the parties. Plaintiff testified that he did not agree to the terms that are set out in Exhibit 6 (which are the terms upon which the defendant thought they were operating) and that he never agreed to any terms different from those set out in Exhibit 6.

Plaintiff has testified that there never was a meeting of the minds between the parties as to how they would conduct business for the 1999 Christmas tree season. With no contract, parties may rely only upon any equitable remedies they may have. *Potter v. Homestead Preservation Association*, 330 N.C. 569, 578, 412 S.E.2d 1 (1992). As discussed above, plaintiff has none as a matter of law.

■■ Even if plaintiff had not unequivocally stated that no contract existed, no contract at law could be found because "if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform thereon." *Coleman v. Shirlen*, 53 N.C.App. 573, 577–78, 281 S.E.2d 431 (1981). Admittedly defrauding the defendant and obtaining substantial wire transfers in order to pay personal debts, rather than secure the trees which did not exist, constitutes a material breach as a matter of law. Summary judgment will be granted in favor of defendant on plaintiff's breach-of-contract claim.

■ Finally, evidence has been submitted to this court that indicates that the criminal laws of the United States may have been violated, constituting felonies, within the territorial boundaries of this court. This court does not undertake lightly or with any pleasure what it is compelled by law to next do. The laws of the United States provide, as follows:

> Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 4. The pleadings in this matter make clear that there is the possibility that plaintiff has committed a number acts that could be violative of the criminal laws of the United States, as well as the laws of

the State of North Carolina. The pleadings reveal the following:

(1) mail fraud, in violation of 18 U.S.C. § 1341;

(2) wire fraud, in violation of 18 U.S.C. § 1343;

(3) bank fraud, in violation of 18 U.S.C. § 1344;

(4) income-tax evasion;

(5) obtaining property by false pretenses, in violation of N.C.Gen.Stat. § 14–100; and

(6) embezzlement, in violation of N.C.Gen.Stat. § 14–99.

In fulfilling its duty and obligation under Section 4, the court will certify a copy of this Memorandum of Decision to the United States Attorney for the Western District of North Carolina for whatever action he deems appropriate.

A judgment reflecting the decision contained herein and granting judgment in favor of defendant and against plaintiff ·is filed simultaneously herewith.