HELEN LOCUST, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF LESTER R. TYSON v. PITT COUNTY MEMORIAL HOSPITAL, INC., JAMES M. GALLOWAY, M.D., LINDA G. MONTEITH, M.D., AND PITT FAMILY PHYSICIANS

No. 643A02

(Filed 6 February 2004)

## Intestate Succession— wrongful death proceeds—proper beneficiaries—standing—renunciation

The trial court erred in a wrongful death case by granting summary judgment in favor of defendants and concluding that plaintiff sister, who was also the administratrix of decedent's estate, did not have standing to bring this action to recover any wrongful death proceeds through the Intestate Succession Act based on the existence of decedent's estranged wife notwithstanding her renunciation of any interest in decedent's estate, because: (1) decedent's surviving spouse had abandoned decedent and was living apart from him at the time of his death, thereby precluding her pursuant to N.C.G.S. § 31A-1 from inheriting from him under the Intestate Succession Act; (2) the surviving spouse's renunciation of rights to decedent's estate was unnecessary and of no effect when N.C.G.S. § 31A-1, as part of the Intestate Succession Act, took effect at the time of decedent's death; and (3) decedent's brothers and sisters are the real parties in interest and have standing to maintain this action under N.C.G.S. § 29-15(4) as the proper beneficiaries of any wrongful death recovery.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 154 N.C. App. 103, 571 S.E.2d 668 (2002), affirming an order for summary judgment entered 22 August 2001 by Judge James R. Vosburgh in Superior Court, Pitt County. Heard in the Supreme Court 8 September 2003.

*Burford & Lewis, PLLC, by Robert J. Burford, for plaintiff-appellant.*

*Harris, Creech, Ward and Blackerby, P.A., by R. Brittain Blackerby and Joseph E. Elder, for defendant-appellees Pitt County Memorial Hospital, Inc., and Linda G. Monteith, M.D.*

*Herrin & Morano, by Mickey A. Herrin, for defendant-appellees James M. Galloway, M.D., and Pitt Family Physicians.*

LAKE, Chief Justice.

This appeal arises out of a unique set of circumstances bringing into question the interplay between chapter 31A, Acts Barring Property Rights and chapter 29, the Intestate Succession Act, and their effect upon the Wrongful Death Act, N.C.G.S. § 28A-18-2. The primary issue is whether chapter 31A should be considered a part of chapter 29 thereby changing the rules of intestacy, for purposes of determining standing in a wrongful death action.

In this case, Helen Locust ("plaintiff") instituted a wrongful death action, and she now appeals from a decision of the North Carolina Court of Appeals affirming the trial court's grant of summary judgment in favor of Pitt County Memorial Hospital Inc., James M. Galloway, M.D., Linda G. Monteith, M.D., and Pitt Family Physicians (collectively "defendants"). For the reasons herein set forth, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the trial court.

Lester R. Tyson ("decedent") was admitted to Pitt County Memorial Hospital's emergency room on the afternoon of 4 June 1992 for evaluation and treatment related to complaints of abdominal pain and nausea. On 5 June 1992, Pitt County Memorial Hospital admitted decedent as an in-patient and assigned him to a room. Over the next two days, decedent was evaluated and treated by physicians from Pitt County Memorial Hospital's Departments of Hematology and Quadrangle Gastroenterology, as well as East Carolina University Surgery, and decedent's primary care physician, Dr. Galloway. At approximately 8:15 p.m. on 7 June 1992, decedent experienced an onset of seizure activity. After receiving notice of the seizures, Dr. Galloway prescribed medication and ordered a computerized tomography ("CT scan") for decedent. At some point after notifying Dr. Galloway, the hospital staff discovered decedent lying on the floor in the hallway outside his room, suffering from a bleeding traumatic head injury. The nursing staff called for help from the emergency room. Dr. Monteith, an emergency room resident, responded to the call at 10:15 p.m. and sutured decedent's head wound. Decedent's medical condition continued to deteriorate, and Dr. Galloway transferred decedent to the hospital's critical care unit. A second CT scan was ordered by the critical care physicians on the morning of 8 June 1992. This scan, performed at 12:15 p.m. on 8 June 1992, revealed a large right temporal hemorrhage, a ventricular bleed, and a left scalp hematoma. At 1:30 p.m. on the same day, a neurology consult was performed by Dr. John Griffith Steele. Dr. Steele pronounced dece-

dent brain dead at 4:45 p.m. Decedent died at 8:46 p.m. on 8 June 1992. An autopsy of decedent's body disclosed that his cause of death was a traumatic blunt force injury to the head.

At the time of his death, decedent was survived by two brothers, four sisters, and an estranged wife. On 2 June 1994, decedent's sister, plaintiff Helen Locust, qualified as administratrix and filed a complaint alleging negligence against defendants and seeking to recover damages for decedent's wrongful death including: (1) damages for his care, treatment and hospitalization; (2) pain and suffering and loss of enjoyment of life; (3) mental anguish; (4) funeral expenses; (5) present and future monetary value to his family; and (6) punitive damages. The damages sought reflect the posture of the action as both a survival action wherein the complaint sought damages suffered by decedent prior to his death and a wrongful death action where the family sought compensation for damages it would suffer for the loss of decedent. On 16 November 1994, plaintiff voluntarily dismissed this complaint.

On 17 July 1995, plaintiff filed a "Statement of Renunciation and Acts Barring Property Rights," signed by decedent's estranged wife, Brenda K. Tyson ("Mrs. Tyson"). In this statement, Mrs. Tyson, pursuant to chapter 31B, purported to "renounce . . . any interest in the estate of Lester Tyson or any interest in any wrongful death action brought by reasons of his death." Mrs. Tyson stated that she voluntarily left decedent in 1989, willfully and without just cause, with the intent of abandoning him permanently.

Plaintiff refiled a substantially similar complaint on 9 November 1995. Defendants moved for summary judgment, and their motion was granted on 22 August 2001 on the ground that *Evans v. Diaz*, 333 N.C. 774, 430 S.E.2d 244 (1993) stripped plaintiff of standing. The Court of Appeals in a split decision affirmed the trial court's decision. *Locust v. Pitt Cty. Mem'l Hosp., Inc.*, 154 N.C. App. 103, 571 S.E.2d 668 (2002), *disc. rev. denied*, 356 N.C. 673, 579 S.E.2d 272 (2003). The Court of Appeals' dissenting opinion concurred with the majority opinion's decision to affirm summary judgment regarding the survival action. The dissenting opinion disagreed with the majority opinion's conclusion that decedent's siblings were barred from recovery under the Wrongful Death Act because of the existence of decedent's estranged wife notwithstanding her renunciation. This appeal therefore is before us solely on the issue raised in the dissenting opinion, namely whether plaintiff, as sister of decedent and administratrix of his estate, has standing to pursue a wrongful death action when dece-

dent was legally married but abandoned by that spouse at the time of his death.

The crux of this case revolves around the interpretation of three statutes: N.C.G.S. § 28A-18-2, Death by Wrongful Act of Another; N.C.G.S. § 31A-1, Acts Barring Rights of Spouse; and chapter 29, the Intestate Succession Act.

The Wrongful Death Act provides in part:

(a)  When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their personal representatives or collectors, shall be liable to an action for damages, to be brought by the personal representative or collector of the decedent.

N.C.G.S. § 28A-18-2(a) (2003).

Any sum recovered from a wrongful death action after certain expenses have been paid "shall be disposed of as provided in the Intestate Succession Act." *Id.*

On its face, the plain language of this statute suggests no standing problems for plaintiff in bringing the wrongful death action. Plaintiff as personal representative of decedent's estate explicitly has the right to bring an action for his wrongful death. *Id.* However, the question of identity of the potential wrongful death beneficiaries drives the standing issue. Our case law and common sense justify the conclusion that there can be no wrongful death action where there are no potential beneficiaries. In *Evans v. Diaz*, this Court stated: "In an action brought under the Wrongful Death Act[,] the real party in interest is not the estate but the beneficiary of the recovery as defined in the Act." *Evans*, 333 N.C. at 776, 430 S.E.2d at 245 (citing *Davenport v. Patrick*, 227 N.C. 686, 688, 44 S.E.2d 203, 205 (1947)).

On the basis of *Evans*, the Court of Appeals' majority held that: (1) Mrs. Tyson, as decedent's legal wife at the time of his death, is the sole beneficiary of the wrongful death proceeds under the Intestate Succession Act notwithstanding her renunciation; (2) her abandonment of decedent deprives her of any right to the property under N.C.G.S. § 31A-1; and (3) because this leaves no beneficiary for the potential proceeds, there can be no wrongful death action.

The beneficiary as defined by the Wrongful Death Act is one that would take from decedent under the Intestate Succession Act. Any wrongful death recovery "shall be disposed of as provided in the Intestate Succession Act." N.C.G.S. § 28A-18-2(a). The Intestate Succession Act in N.C.G.S. § 29-14 provides that where the decedent or intestate dies survived by a spouse but no lineal descendants or parents, the surviving spouse inherits all personal and real property of the decedent. The next section of the Act, N.C.G.S. § 29-15, provides for intestate distribution to those other than the surviving spouse.

> Those persons surviving the [decedent], other than the surviving spouse, shall take that share of the net estate *not distributable to the surviving spouse*, or the entire net estate if there is *no surviving spouse*, as follows:
>
> . . . .
>
> (4) If the intestate is not survived by such children or lineal descendants or by a parent, the brothers and sisters of the intestate, and the lineal descendants of any deceased brothers or sisters, shall take as provided in G.S. 29-16.

N.C.G.S. § 29-15 (2003) (emphasis added).

Applying the Intestate Succession Act to determine the beneficiaries in the case *sub judice*, N.C.G.S. § 29-14 directs potential wrongful death proceeds to Mrs. Tyson, the surviving spouse at the time of decedent's death. N.C.G.S. § 29-15 presupposes the current situation where a spouse cannot take part in the distribution pursuant to N.C.G.S. § 29-14 by providing for persons, other than the surviving spouse to take "that share of the net estate *not distributable to the surviving spouse*." N.C.G.S. § 29-15 (emphasis added).

In light of the overall sequence, it is evident that the legislature intended for the distribution provided in N.C.G.S. § 29-15 to be read in conjunction and accordance with N.C.G.S. § 29-14, which dictates the share of the surviving spouse, often diminished by the presence of decedent's children and parents. The critical question is whether the statutes were intended to include the situation at bar, where the spouse's share was "not distributable" to her due to her action in abandoning decedent and thus barring her from taking his property under N.C.G.S. § 31A-1.

Section 31A-1 states that "[a] spouse who wilfully and without just cause abandons and refuses to live with the other spouse and is

not living with the other spouse at the time of such spouse's death" loses the right of intestate succession in the estate of the spouse who died. N.C.G.S. § 31A-1(a)(3) (2003). Notably, under the wording of the statute, intent to abandon and abandonment even when combined, are insufficient to preclude an abandoning spouse from intestate succession. The abandoning spouse must also "not [be] living with the other spouse at the time of such spouse's death." N.C.G.S. § 31A-1. This Court has held that a spouse may abandon the other spouse without physically leaving the home, thus likely prompting the legislature to include the additional requirement in N.C.G.S. § 31A-1. *Panhorst v. Panhorst*, 277 N.C. 664, 671, 178 S.E.2d 387, 392 (1971) (citing *Bailey v. Bailey*, 243 N.C. 412, 415, 90 S.E.2d 696, 699 (1956); *McDowell v. McDowell*, 243 N.C. 286, 287, 90 S.E.2d 544, 545 (1955); *Blanchard v. Blanchard*, 226 N.C. 152, 154, 36 S.E.2d 919, 920 (1946)). Because absence from the marital home is an element under the statute, a determination of spousal preclusion from intestate succession cannot be made until the death of the other spouse.

Both the determination of spousal exclusion under N.C.G.S. § 31A-1 and the determination of beneficiaries under the Intestate Succession Act are made at the time of decedent's death. *Davenport v. Patrick*, 227 N.C. 686, 689, 44 S.E.2d 203, 205. In *Williford v. Williford*, 288 N.C. 506, 219 S.E.2d 220 (1975), this Court held that "G.S. 31A-2 . . . enacted in 1961, two years after the enactment of the Intestate Succession Act, must be deemed a part of the Intestate Succession Act and a modification of G.S. 29-15(3), as fully as if it had been written thereinto or specifically designated as an amendment thereto." *Id.* at 508-09, 219 S.E.2d at 222.

*Williford* involved the right of an abandoning parent to share in the proceeds received from the wrongful death of his abandoned child. *Williford*, 288 N.C. 506, 219 S.E.2d 220. This Court in *Williford*, relying in part upon the logic of *Smith v. Allied Exterminators, Inc.*, 279 N.C. 583, 184 S.E.2d 296 (1971), held:

that when the Legislature, in G.S. 28-173, provided that the proceeds of an action for wrongful death "shall be disposed of as provided in the Intestate Succession Act," and when it provided in G.S. 97-40 that the order of priority among claimants to death benefits payable under the Workmen's Compensation Act "shall be governed by the general law applicable to the distribution of the personal estate of persons dying intestate," it had in mind the

same law; i.e., the Intestate Succession Act as modified by G.S. Ch. 31A, entitled, "Acts Barring Property Rights."

*Williford*, 288 N.C. at 510, 219 S.E.2d at 223.

This Court in *Williford* twice emphasized that the Intestate Succession Act was modified by chapter 31A. *Id.* at 508-10, 219 S.E.2d at 222-23. *Williford* held that the father who had abandoned the deceased as a minor child could not share in the settlement proceeds of the wrongful death suit. *Id.* at 510, 219 S.E.2d at 223. We agree with the analysis of *Williford* and hold this precedent applicable in the present case. When decedent died, his abandoning wife was not living with him. Mrs. Tyson, having thus completed her abandonment of decedent within the full requirement of N.C.G.S. § 31A-1, was thus precluded from inheriting from decedent because the Intestate Succession Act as modified by chapter 31A does not allow it. Because Mrs. Tyson could not inherit from decedent, it follows that she could not receive any wrongful death proceeds directed by the Intestate Succession Act. Thus, Mrs. Tyson's subsequent renunciation of interest in decedent's estate and in the potential wrongful death proceeds was superfluous and of no effect because she then held no interest to renounce.

The Intestate Succession Act directs distribution of the shares *"not distributable to the surviving spouse"* in accordance with N.C.G.S. § 29-15. Decedent was not survived by any lineal descendants or parents, so his brothers and sisters and the lineal descendants of any deceased brothers or sisters "take as provided in G.S. 29-16." N.C.G.S. § 29-15(4). Therefore, as the proper beneficiaries of any wrongful death recovery and thus the real parties in interest, decedent's brothers and sisters have standing to maintain the action under *Davenport.*

Defendants, the trial court, and the Court of Appeals' majority have relied solely upon the case of *Evans v. Diaz*, 333 N.C. 774, 430 S.E.2d 244 as authority for dismissal of the action. In *Evans,* this Court held that a mother who caused the death of her son could not renounce her right to inherit from her son in favor of her daughters and thereby allow the daughters to maintain a wrongful death action against her. *Id.* at 775, 430 S.E.2d at 244. In *Evans,* this Court did not once reference the slayer statute provision in N.C.G.S. § 31A-3 or any other provision in chapter 31A, in its opinion although the mother in *Evans* caused the death of her son. Rather, this Court relied solely on

case law and chapter 31B for the proposition that the daughters could not seek wrongful death recovery through their mother's renunciation of interest.

> "[I]n wrongful death actions where recovery depends on establishing the liability of a party who is also a beneficiary of the decedent's estate, the recovery obtained shall be reduced by the party-beneficiary's pro rata share and the party-beneficiary is precluded from participating in the recovery; but the action may be maintained on behalf of the other beneficiaries, if any. Further, if recovery in a wrongful death action depends on establishing the liability of a party who is the sole beneficiary of decedent's estate, the action may not be brought at all."

*Id.* at 777, 430 S.E.2d at 245 (quoting *Carver v. Carver*, 310 N.C. 669, 678, 314 S.E.2d 739, 744 (1984)). This Court concluded that because the decedent's mother, as sole beneficiary under the Intestate Succession Act, could not maintain the wrongful death action, she had no interest to renounce in favor of her daughters, the decedent's siblings. *Evans*, 333 N.C. at 777, 430 S.E.2d at 245. The bulk of the opinion focuses on renunciation and whether renunciation should be allowed under the Wrongful Death Act, concluding that renunciation is not proper under the Wrongful Death Act. *Id.* at 781, 430 S.E.2d at 248.

The present case is distinguishable, factually and in application of the law, from *Evans.* The situation at bar differs factually from *Evans* in several respects. First, decedent's wife did not cause or contribute to decedent's death. Her abandonment of him statutorily precludes her from inheriting from him and receiving wrongful death proceeds. Second, decedent's siblings are not attempting to succeed to the interest of the abandoning wife, as were the sisters of the decedent in *Evans* in attempting to succeed to their mother's interest. Third, although both cases involve purported renunciations, the renunciation at bar was unnecessary and of no effect because N.C.G.S. § 31A-1, as part of the Intestate Succession Act, took effect at the time of decedent's death. To the contrary, the renunciation in *Evans* was the only means by which the decedent's sisters could possibly recover.

In addition to the factual variations, the law applicable to *Evans* is not applicable at bar. *Evans* relied upon North Carolina case law prohibiting one who negligently caused the death of another from

maintaining a wrongful death action and thereby profiting from his own wrong, rather than N.C.G.S. § 31A-1 or the slayer statute provision in N.C.G.S. § 31A-3. *Evans*, 333 N.C. at 777, 430 S.E.2d at 245 (citing *In re Estate of Ives*, 248 N.C. 176, 102 S.E.2d 807 (1958)). The case law relied upon by this Court in *Evans* grounds its logic in the common law, as the slayer statute and the provisions of N.C.G.S. § 31A-1 are inapplicable where the death is caused by negligence. *See also*, Julie W. Hampton, *Comment: The Need For a New Slayer Statute in North Carolina*, 24 Campbell L. Rev. 295 (2002). The omission of discussion or analysis of the slayer statute, also known as N.C.G.S. § 31A-3, or other provisions of chapter 31A, in *Evans* is significant, as those sections would have provided a legal similarity to the present case which is governed under the same chapter, by N.C.G.S. § 31A-1.

Chapters 31A and 29 are not mutually exclusive and are to be read together to direct the proper application of the Wrongful Death Act. *See Williford*, 288 N.C. at 510, 219 S.E.2d at 223. Read together, and in light of *Williford*, these statutes clearly mandate distribution of potential wrongful death proceeds to decedent's brothers and sisters. Mrs. Tyson had abandoned decedent and was living apart from him at the time of his death, thereby precluding her pursuant to chapter 31A from inheriting from him under the Intestate Succession Act.

We therefore conclude that decedent's brothers and sisters, as decedent's closest relatives other than his wife, should share in any wrongful death proceeds, as the Wrongful Death Act directs distribution of those proceeds through the Intestate Succession Act. As an appropriate beneficiary of any potential wrongful death recovery and as administratrix of decedent's estate, we hold that plaintiff has standing to bring the wrongful death action, and we reverse the decision of the Court of Appeals. Accordingly, we remand to the Court of Appeals for remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.