IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-322

Filed 31 December 2024

Brunswick County, No. 22 E 876

IN THE MATTER OF THE ESTATE OF
JOHNATHAN MATTHEW BOZEMAN,
Deceased.

Appeal by Respondent Sage C. Huddleston from order entered 16 November 2024 by Judge Joshua W. Willey in Brunswick County Superior Court. Heard in the Court of Appeals 25 September 2024.

*Law Office of Jason R. Page, PLLC, by Jason R. Page, for respondent-appellant.*

*Ward and Smith, P.A., by Jordan M. Spanner and Mary V. Cavanagh, for petitioner-appellee.*

DILLON, Chief Judge.

Johnathan Matthew Bozeman died intestate in 2022. He was survived by his mother, Petitioner Pamela Tompkins Boyd ("Mother"), and his wife, Respondent Sage C. Huddleston ("Wife").

Mother filed a motion in Mr. Bozeman's Estate proceeding pursuant to N.C.G.S. § 31A-1(a)(3) for an order declaring that Wife be barred from inheriting from her husband's Estate, alleging that Wife had abandoned him prior to his death.

After a hearing on the matter, the trial court entered an order barring Wife from inheriting from the Estate of her deceased husband. Wife appeals.

## I.    Introduction

The issue on appeal is whether the trial court properly determined that Wife was barred from inheriting from her deceased husband, pursuant to N.C.G.S. § 31A-1(a)(3), *based on abandonment*.  This statute provides that a surviving spouse loses her rights of intestate succession in her deceased spouse's estate if two things are shown; namely, that she "[1] willfully and without just cause abandons and refuses to live with the other spouse and [2] is not living with the other spouse at the time of such spouse's death[.]"  N.C.G.S. § 31A-1(a)(3).  *See also Locust v. Pitt Cnty. Mem'l Hosp., Inc.*, 358 N.C. 113, 118 (2004) (recognizing that both conditions must be shown for Section 31A-1 to apply).

Wife concedes that she and Mr. Bozeman were living apart at the time of Mr. Bozeman's death.  Her only arguments concern the first element:  whether the trial court's findings support its conclusion that she abandoned Mr. Bozeman.

We review (1) whether the trial court's challenged findings are supported by the evidence and (2) whether the unchallenged findings and the challenged findings supported by the evidence support its conclusion that Wife had abandoned Mr. Bozeman.  *See, e.g., In re Est. of Whitaker*, 179 N.C. App. 375, 382 (2006).

In assessing whether the findings of the trial court support abandonment, we review those findings, which essentially show as follows:

Wife lives in Florida and is the "estranged wife" of Mr. Bozeman (up to his death).  Mr. Bozeman, at all times relevant to our analysis, lived in North Carolina.

From 1999 to 2000, almost two decades prior to their marriage, Wife and Mr. Bozeman had cohabited in a romantic relationship. At that time, Wife became aware of Mr. Bozeman's substance abuse problem, which included periods of sobriety and periods of relapse.

In 2018, they married and honeymooned for approximately one month in Europe. Upon their return to the United States, Mr. Bozeman continued to live in North Carolina, and Wife continued to live in Florida, "at least in part so that she could care for her nephew." She "visited" Mr. Bozeman on some weekends. Mr. Bozeman, however, never visited Wife in Florida, as he had no valid driver's license. Wife had a job which did not prevent her from living in North Carolina, as she could and did work remotely in her job. They never established a marital home.

During the marriage, Mr. Bozeman continued to struggle with substance abuse, experiencing periods of relapse, of which Wife was aware.

In July 2019, Wife stopped visiting Mr. Bozeman; and Mother "became aware [ ] that the marriage" between Mr. Bozeman and Wife "was ending based on conversations" Mother had with each of them. They never saw each other again. In any event, that same month (July 2019), Mr. Bozeman began sending Wife angry emails. However, in April 2020, he sent her an email apologizing for his conduct, though acknowledging that their marriage was coming to an end. His April 2020 email to Wife stated:

I really am sorry things ended up this way. More importantly I'm sorry

> for all the mean things that I said to you in the past. I realize now that I was hurting real bad and I was only trying to make you hurt as well. Things are really slow for me right now but I would like you to know that I intend to pay you back for Europe. I hope you find some form of happiness and I'm sorry for any sadness that I've caused you.

Wife and Mr. Bozeman never divorced. They remained husband and wife for the remainder of Mr. Bozeman's life. (Though not expressly found by the trial court, the record shows that Mr. Bozeman died in January 2022. There was evidence from both Wife and Mother that Wife and Mr. Bozeman continued to communicate. Mother testified that she was aware that Wife and Mr. Bozeman spoke on at least four occasions after July 2019. Wife testified that she and Mr. Bozeman spoke on several occasions up through the latter part of 2021, including making plans to meet up in Las Vegas in late 2021, but that Mr. Bozeman never showed and then died a few months later from an overdose.)

After Mr. Bozeman's death, Wife had "lengthy conversations with a cousin of Mr. Bozeman in which she "acknowledged that she had no contact with [Mr. Bozeman], that the marital relationship had ended, and that she was living with someone else." "Based on those conversations," Mother "believed that [Wife] was in a romantic relationship with someone else." Wife admitted to Mother that "she was in a romantic relationship with someone else after July 2019." (She testified that she had roommates during this period but no live-in paramour.)

We note that Wife challenges several findings, contending that they are not actually findings, but rather mere recitations of evidence. *See Harrison v. Gemma*

*Power Sys., LLC*, 369 N.C. 572, 583 (2017) (holding that a trial court "fails to adequately address the necessary issue" where the finding "contains a mere recitation of the evidence rather than true findings"). We agree with many of Wife's contentions. For instance, the trial court found that *Mother believed* that Wife was in a romantic relationship and that after Mr. Bozeman's death *Wife stated to Mother and to Mr. Bozeman's cousin* that she was living with someone else and in a romantic relationship with someone else. The trial court never actually found that Wife was, indeed, in a romantic relationship with someone else prior to Mr. Bozeman's death. (We note there was conflicting evidence on this point, as Wife denied it to be the case.)

Further, the trial court made no findings regarding Mr. Bozeman's condition in 2020. Rather, the trial court found that Mr. Bozeman had a housemate in 2020 and that *this housemate stated* that he never observed any drug use, or psychotic or violent behavior by Mr. Bozeman while he was living there and that *this roommate never observed* anything to indicate that it would not be safe for Wife to live with Mr. Bozeman. Again, however, the trial court failed to make a finding on the key factual issue: It never found whether it actually would have been safe for Wife to live with Mr. Bozeman during this time.

Wife also challenges on appeal the trial court's characterization of her being the "estranged" wife of Mr. Bozeman. Wife cites to evidence that the trial court's characterization can mean that Wife was separated from and not having any real contact with Mr. Bozeman for a period of time before his death. And there is evidence

showing that Wife and Mr. Bozeman never saw or spoke with each other for the two years or so leading up to his death.

## II.    Analysis

Our Supreme Court has defined marital abandonment as when a spouse "brings their cohabitation to an end without justification, without the consent of the other spouse and without intent of renewing it." *Panhorst v. Panhorst*, 277 N.C. 664, 671 (1971). That Court has instructed that whether the surviving spouse had *the intent* to abandon her spouse is a finding of fact. *See Pratt v. Bishop*, 257 N.C. 486, 501 (1962) ("Willful intent is an integral part of abandonment[,] and this is a question of fact to be determined from the evidence."). However, that Court has also instructed that whether abandonment has actually occurred based on findings is a conclusion of law. *See In re Est. of Lunsford*, 359 N.C. 382, 387–88 (2005).

Also, the elements of abandonment must be based on the conditions as they existed *at the time of Mr. Bozeman's death*. *See Locust*, 358 N.C. at 118 (stating that "the determination of spousal exclusion under N.C.G.S. § 31A-1 . . . [is] made at the time of decedent's death"). Further, the burden is on the party asserting that an abandonment has occurred to prove each and every element of abandonment. *See, e.g.*, *Murray v. Murray*, 296 N.C. 405, 408 (1979) (noting the burden is on the party asserting abandonment in context of alimony); *In re A.L.L.*, 376 N.C. 99, 110 (2020) (noting the burden is on the party asserting abandonment in the context of termination of parental rights). Thus, the burden is on Mother to prove each element

of abandonment.

We now consider Wife's arguments, in which she contends that the findings and the uncontradicted evidence do not support the trial court's conclusion that Wife abandoned Mr. Bozeman.

A. "Brings Cohabitation to an End Without Justification"

Wife argues that it is impossible for abandonment to occur where she never actually lived with Mr. Bozeman, contending that she could not have brought her cohabitation with Mr. Bozeman "to an end" if they never actually cohabitated in the first place. We disagree.

Our Supreme Court has defined "cohabitation" as the "dwelling together continuously and habitually" and the "voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people." *Bird v. Bird*, 363 N.C. 774, 779−80 (2010).

It is true that Wife and Mr. Bozeman never "dwelled" in the same marital home. But the evidence and findings of the trial court do show that they spent a month together in Europe and then, for a period, had an arrangement where they spent many weekends together at Mr. Bozeman's North Carolina home. The trial court also found that Wife registered to vote and registered her vehicle in North Carolina for a period of time during the marriage.

However, even assuming that Wife never "cohabited" with Mr. Bozeman, we conclude that there is no requirement that spouses have previously established a

marital home as part of showing that one spouse has abandoned the other spouse. It is true that our Supreme Court in *Panhorst* and our courts in other cases have suggested "abandonment" to include *the bringing cohabitation to an end* by the abandoning spouse. But *Panhorst* involved a situation where the spouses at one time shared a marital home. *See* 227 N.C. at 666. Neither our Supreme Court nor our Court has ever held that a spouse who has never actually moved in with her spouse cannot abandon that spouse for purposes of being disqualified from inheriting.

To be sure, there are marriages where the spouses choose to live in separate residences but, otherwise, enjoy the benefits and assume the duties of a marriage. And there may be instances where a person cuts off communication with her spouse as they return from their honeymoon before establishing a marital home. In such situations, if one spouse chooses to end contact with the other spouse without the consent of the other spouse, without any justification, and without any intent on renewing the relationship, and *if* the abandoned spouse then dies, it would not be error for a trial court to order that the abandoning spouse be disqualified from inheriting from her abandoned spouse under Section 31A-1.

B. "Without the Consent of the Other Spouse"

Wife argues that the trial court's order is deficient in determining whether the paucity of contact between her and Mr. Bozeman after July 2019 was without Mr. Bozeman's consent. We agree.

The trial court found that Wife never visited Mr. Bozeman in North Carolina.

However, there was evidence that she was willing to have him visit and even live with her in Florida if he became sober. And there was evidence that they had planned to see each other in Las Vegas shortly before his death but that it was him that did not show, due to a relapse.

It may be that Wife refused to live with Mr. Bozeman in North Carolina, but the trial court never made any finding regarding Mr. Bozeman's role in not traveling to see Wife in Florida or to remain sober and move to Florida. Further, the trial court never made any finding regarding Mr. Bozeman's statement in his April 2020 statement that he believed the marriage had ended.

And, here, there is no finding that, just prior to Mr. Bozeman's death, they were living apart without Mr. Bozeman's consent. Rather, their last contact mentioned by the trial court was Mr. Bozeman's April 2020 email in which he apologized for hurting her and "hope[d] [she would] find some form of happiness." This email shows his consent for them to live apart as they sought to end their marriage. However, the marriage did not end before Mr. Bozeman died.

To be sure, Mr. Bozeman cannot be said to have consented if it was found that the separation between him and Wife was based on Wife's misconduct (leaving without justification) and that he later merely *acquiesced* to the situation. *See Sauls v. Sauls*, 288 N.C. 387, 390 (1975).

C.  "Without Intent of Renewing the Marital Relationship"

Wife argues that the trial court's order is deficient regarding the "intent not to

renew" element of abandonment. We agree.

Here, there is no finding that *at the time of Mr. Bozeman's death* Wife had "no intent" to continue seeking reconciliation in the marriage. The Court found that Mr. Bozeman stated in his April 2020 email that he believed the marriage to be *ending*. However, there was evidence that Mr. Bozeman sent this email during a period of sobriety and that, thereafter, they reopened communications in which they each indicated a desire to reconcile. Also, neither ever filed for divorce.

### D. "Without Justification"

Finally, Wife argues that the trial court's order is deficient in determining whether *she* ended contact with Mr. Bozeman or otherwise did so without justification. We agree. Further, for the reasoning below, we conclude that Mother failed to meet her burden of producing evidence that Wife's decision to stop visiting Mr. Bozeman in North Carolina after July 2019 was without justification.

Presuming that Wife unilaterally decided to separate from Mr. Bozeman, it is not Wife's burden to show *as a defense* that she was justified in doing so. Rather, "without justification" is an affirmative element of abandonment. Accordingly, it is Mother's burden to show, not only that Wife left Mr. Bozeman but that she did so without justification. *See, e.g., Gilmartin v. Gilmartin*, 263 N.C. App. 104, 110–11 (2018) (noting that the moving party must plead that the other party left "without justification" to state a claim for abandonment); *Vandiver v. Vandiver*, 50 N.C. App. 319, 327 (1981) (holding that the wife asserting abandonment must prove her

husband's bad acts *and that* she had not provoked husband's behavior).[1]

Wife contends that she was justified in living apart from Mr. Bozeman, contending that he treated her cruelly due to his drug addiction. Indeed, our Supreme Court has held that "[w]hen the husband, by cruel treatment, renders the life of the wife intolerable or puts her in such fear for her safety that she is compelled to leave the home, the abandonment is his, not hers." *Eggleston v. Eggleston*, 228 N.C. 668, 679 (1948). Again, though, it is not incumbent on Wife to show that Mr. Bozeman abandoned her. Rather, the only issue here is whether she abandoned Mr. Bozeman. And it may be that no abandonment occurred.

In her brief, Mother contends that Wife was *not* justified because Wife knew of Mr. Bozeman's on-again, off-again drug use when she married him and that her "plan of leaving him when he was using drugs and, purportedly, returning when he was sober" did not justify her "abandonment."

However, the only evidence presented at the hearing showing the reason Wife and Mr. Bozeman stopped seeing each other in July 2019 was from Wife, that the separation was due to Mr. Bozeman's cruel behavior towards her during his relapses. (Indeed, the trial court found that Mr. Bozeman had periods of relapse during the

---

[1] In its order's "conclusion of law" section, the trial court determined that Wife "refused to live with Mr. Bozeman." This determination, however, is a finding of fact; and we, therefore, treat that determination as such. *See In re J.S.*, 374 N.C. 811, 818 (2020) ("We are obliged to apply the appropriate standard of review to a finding of fact or conclusion of law, regardless of the label which it is given by the trial court.").

marriage prior to July 2019.) For instance, she testified that she was subjected to physical abuse when Mr. Bozeman would mix Xanax and alcohol which, if true, would exacerbate the impact of Mr. Bozeman's substance abuse and addiction. A victim of domestic violence does not commit abandonment when refusing to live with his or her assailant. Acquiescence and attempts to improve the conditions throughout the marriage do not constitute consent to future abuse and would not make her later decision to leave or her refusal to rejoin the marriage unjustified. Her testimony about Mr. Bozeman's threatening behavior was bolstered by some of Mr. Bozeman's post-July 2019 emails to her in which he threatened her, as described below.

For her part, Mother offered no evidence to show that the July 2019 separation was the unilateral choice of Wife, done "without justification." She offered no evidence showing that Mr. Bozeman had not been threatening up to July 2019. Rather, in her testimony, Mother testified that she did not know why Wife and Mr. Bozeman stopped seeing each other as of July 2019. She testified that she spoke with both Wife and Mr. Bozeman around the time of the separation but that she never asked them what exactly happened. Again, it is not necessary for Wife to prevail that the trial court believe that Mr. Bozeman was a threat to her up to July 2019. Rather, it is sufficient if Mother failed to present any evidence showing that Mr. Bozeman's bad conduct was not the reason for the separation.

There was evidence that Wife, at some later point, was in a romantic relationship with someone else (which she denies). But there is no evidence that she

was in such a relationship during the marriage in or prior to July 2019. Rather, Mother testified that she believed the relationship did not start until "after" July 2019, and probably not until 2020 or 2021. In sum, the only evidence as to the reasons for the July 2019 separation came from Wife, that the separation was due to Mr. Bozeman's relapse and ill treatment of Wife.

Evidence shows that in the months following July 2019, Mr. Bozeman sent a series of cruel emails to Wife, sometimes followed by apologetic emails, before his final apology in his April 2020 email (reproduced above in Section I). In some of the emails, he physically threatened Wife, stating in one email that "when you see me next[,] it will be your last" and, in another, that "[y]ou might get what you're after! Burning down the house." The evidence further demonstrated Mr. Bozeman's ups and downs during this time as he struggled with his addiction in 2019. For example, on 2 October 2019, he sent a series of cruel emails to Wife. But three days later, on 5 October 2019, he sent an email stating that he loved her, thought she was smart, and would have loved her for the rest of their lives. He admitted in his April 2020 email that he had sent the prior cruel/threatening emails "to make [her] hurt as well." There was no evidence offered at the hearing that after April 2020 Mr. Bozeman ever sought to reconcile with Wife which was rebuffed by Wife.

In sum, assuming the separation of Wife and Mr. Bozeman was unilaterally Wife's decision, there was no evidence showing that the separation was without

justification.[2] There is no evidence showing that Wife engaged in an abandonment of Mr. Bozeman after April 2020. There is no evidence that he ever sought to go see Wife or that he was rebuffed in efforts to get back with her. Accordingly, Wife was entitled to a ruling declaring her eligible to take under her deceased husband's estate, as Mother failed to present evidence showing all the elements of abandonment.

### III.    Conclusion

Mother failed to present evidence to meet her burden of showing that Wife abandoned Mr. Bozeman. Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this opinion, including that Wife be declared eligible to inherit as Mr. Bozeman's widow.

REVERSED AND REMANDED

Judge MURPHY concurs.

Judge THOMPSON concurs in result only.

---

[2] We note the trial court's conclusion that Wife "willfully and without just cause abandoned" Mr. Bozeman. Certainly, whether Wife without justification ended contact with Mr. Bozeman is a finding of fact. However, we treat the determination in the order as a conclusion, as whether an abandonment has occurred is a question of law. It is unclear from the order what the trial court meant by including the phrase "without just cause" in concluding that Wife "abandoned" Mr. Bozeman. There is no finding that Wife refused to live with Mr. Bozeman or otherwise see Mr. Bozeman without just cause or justification. And there is no finding that she refused to maintain communications with him, as there was evidence that they continued to communicate well during his periods of sobriety.